MAGIC LIGHT CO. v. ECONOMY GAS-LAMP CO.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1899.)

No. 584.

1. PATENTS—INFRINGEMENT—DESIGN FOR GAS-GENERATING LAMP.

The Williams design patent, No. 30,147, for a fixture for generating and burning gas from liquid hydrocarbons, *held* not infringed.

2. SAME—GAS-GENERATING LAMPS.

The essential feature of the device shown in the Williams patent, No. 606,435, for an improvement in gas-generating gas fixtures, is a generating tube with the bore tapering towards its discharge end, to permit the pressure from the gas generated to be exerted more freely backward in the tube, and to secure an even flow from the discharge end; and, in view of the limitations placed on the claims of the patent by the amendments made to meet objections of the patent office, it cannot be held to cover a device having a generating tube of uniform bore, and in which uniformity of flow is secured by packing the tube with asbestos wicking.

3. SAME—MECHANICAL EQUIVALENTS.

A patent covers only known equivalents, and where it is clear from the proceedings in the patent office that when a patent was granted it was not known that a different device was the mechanical equivalent of one described therein, and its equivalency was expressly denied by the patentee, the mere fact that such device is subsequently shown to accomplish the same result as that of the patent does not render its use for that purpose an infringement.

4. SAME—CONSTRUCTION OF CLAIMS—LIMITATION BY AMENDMENT.

The effect of the amendment of claims to meet the requirements of the patent office as a limitation of the scope of the patent does not rest upon the doctrine of equitable estoppel, but the estoppel in such case is in the nature of one by contract, and its scope in a particular case is a matter of interpretation and construction of the terms used, according to their fair meaning, and with reference to the intention of the parties as disclosed by the proceedings.

5. SAME—METHOD OF CONSTRUCTION.

Where it is plain that an amendment of his claims by an applicant was for the purpose of making a particular construction a distinctive feature of his invention, and he explicitly denied the utility of a different construction to accomplish the result intended, his patent cannot be construed to cover such method of construction.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

James H. Peirce, for appellant.

Chas. L. Dobson and Ephraim Banning, for appellee.

Before BROWN, Circuit Justice, and WOODS and JENKINS, Circuit Judges.

WOODS, Circuit Judge. This appeal is from an interlocutory decree of injunction against infringement of claims 1, 2, 3, 4, 5, 11, 12, and 14 of letters patent No. 606,435, issued on June 28, 1898, to John F. Williams for improvements in gas-generating gas fixtures,

and of a design covered by letters patent No. 30,147 granted to the same patentee on February 7, 1899. Of the accompanying drawings, Fig. 1 of the first patent sufficiently represents the design of the second patent. Fig. 2 is an enlarged representation of the corresponding parts of Fig. 1. The third figure represents the design and construction of the lamp made by the appellant. The design covered by the second patent is described in the specification as follows:

"The fixture consists of two curved arms, A and B, connected at their upper ends to a fitting or casting, C, from which extends a straight section, D. A reservoir, E, is mounted upon said section, D, and a hook, F, extends up from the reservoir. To the lower end of the arm, B, there is fixed a fitting or casting, G, and from the horizontal branch of the fitting extends an arm, H, which stops just short of a projection, I, extending out from a coupling or casting, J, secured to the lower end of arm, A. Extending down from the coupling, G, is an arm, K, its lower end being bent at right angles, forming a horizontal arm, L. A similar arm, M, extends down from coupling, J, and is formed with a horizontal arm, N, the ends of the arms, L and N, being connected to a casting or fitting, O, which forms the burner-support."

Fig. 1.                                        Magic Lamp.

In respect to this it is enough, besides referring to the drawings, to say that the lamp of the appellant resembles no more closely the design of the patent than it resembles other lamps and gas fixtures which are shown to have been in earlier use. In other words, infringement has not been proved.

It is necessary to quote only the first and fourteenth claims of the first patent, since the others mentioned are like the first in respect to the point of controversy. They read as follows:

"(1) In a device for generating and burning gas from liquid hydrocarbons, the combination of a suitable supply-pipe; a gas-generating pipe connected thereto and provided with a gradually-decreasing internal bore towards its discharge end; a discharge-outlet for said generating-pipe; a burner; a mixing-chamber intermediate said burner and outlet; and means for admitting air into said mixing-chamber." "(14) A fixture for generating and burning gas from liquid hydrocarbons, comprising in combination a tube or pipe, 9, having a reservoir connected thereto; supply-pipe, 4; a gas-generator, 12, connected to pipe, 4, and provided with a suitable valve; a mixing and conducting pipe, 1, into which the gas is discharged; an air-inlet for said mixing-pipe, and means for controlling it; a pipe, 3, connecting pipe, 9, and pipe, 1; a pipe, 22, communicating with the mixing-pipe; a chimney mounted on said pipe, 22, below the generator, 12; and a mantle of incandescing material mounted in said chimney."

Pipe 12 of the drawings is the "gas-generating pipe" of the claim. The tapering passage therein, according to the specification, is preferably formed from a tube having a straight passage by placing therein a rod, filed or dressed to form the passage, the rod being held in place by frictional contact. That form of construction is explicitly covered by the thirteenth claim of the patent. The operation of the apparatus, as affected by the narrowing passage, is thus described:

"The liquid hydrocarbon passing from the vessel, 10, through the tubes, 9 and 4, to the vaporizing-tube, 12, is there vaporized by the heat from the flame concentrated through the chimney arranged in close proximity under said tube. The tube, 9, being larger than the tube, 4, and the tube, 4, larger than the vaporizing-tube, and the passage in the vaporizing-tube decreasing in size from inlet to outlet, it is apparent that by reason of the constant decrease in size of the passage from the inlet of the liquid into the pipe, 9, to the exit of the vapor from the vaporizing-tube, any back pressure in the tubes generated during the process of vaporization meets the least possible frictional resistance, and the exit of the vapor will be steady, and cannot puff and blow and cause uneven pressure. In other words, by the arrangement and construction of the passages as shown, but leaving them otherwise clear of any packing or filling material, the particles or molecules of the liquid as they expand or are converted into gas may exert their pressure in a rearward direction, and not tend, as in the usual burners, to force the gas out through the tip under uneven impulses."

This feature of the invention is emphasized by the proceedings in the patent office. The claims first presented did not embody it, and were rejected upon reference to prior patents. To avoid the references the feature was introduced, first without specifying in the first and third claims in which direction the passage should narrow, but finally, in response to the specific demand of the office, defining the direction by inserting the words "towards its discharge end." The advantages of the tapering bore were explained at length by the attorneys of the applicant in the letter of January 14, 1898, in which the following statement was made, distinguishing the tapering bore from other means for retarding the flow of the liquid:

"The tapering bore, however, is to be distinguished from those burners in which the passages are filled with sand, cotton, and the like, for retarding the flow of the liquid. They have just the opposite effect from the chamber with the gradually decreasing bore, in that as the liquid is converted into gas the sudden expansion thereof cannot act in a rearward direction, but must of necessity force the gas out through the discharge opening."

And again in the letter of March 29, 1898, they said:

"Regarding the German patent cited against claims 4, 13, and 14 [present claims 4, 10, and 11], it is apparent from examiner's statement that it has no tapering longitudinal bore; and, inasmuch as neither the Corby nor the Davis patent have it, the reference would seem to be unavailable. In connection with the German patent, and any other which may have the supply tube or the generating chamber filled with wire netting, asbestos, sand, or the like, we would say that we are informed that they do not produce the result here obtained, namely, the steady flow of the gas. Any fluid which has once passed, and is then converted into gas, will exert its explosive force towards the outlet, and consequently will produce a puffing flame."

The response of the office was:

"Claims 1, 3, and 10 are rejected on Haggerty of record, which shows the full matter specified. These claims do not recite the generating tube as tapering towards the discharge end, which, by applicant's argument, is the essential feature of this generating tube."

This objection and others having been obviated by the necessary amendments, the letters were allowed to issue.

The lamp made by the appellant differs from that of the patent in that the bore in its generating tube is without taper, "and is stuffed with a filler of asbestos wicking," and the sole question is whether by reason of that difference the proof of infringement fails. An important phase of the question has not been referred to in the discussion. A patent covers only known equivalents. Except that the desired result is effected by both constructions, there is in the record no evidence of mechanical equivalency between the two, and that they were not known to be equivalent means for producing the desired result when the patent in suit was applied for and issued is put beyond doubt by the correspondence already quoted. The principle on which the tapering tube was supposed to act was explained, and it was said, on information derived presumably from the patentee, that wire netting, asbestos, or the like, in the supply tube or in the generating chamber, "do not produce the result here obtained, namely, the steady flow of the gas"; and to emphasize the proposition, by explanation of the theory of action, it was added that "any fluid which has once passed, and is then converted into gas, will exert its explosive force towards the outlet, and consequently will produce a puffing flame." Experience demonstrates that this is not true when there is an asbestos wicking in the generating chamber, but it remains true that the asbestos wicking so used in a tube of even bore was not known to the patentee, and probably not to others, as the mechanical equivalent of the tapering bore for the purpose attributed to the latter; and, now that such wicking in the tube is shown to produce the desired result, it is yet unproved that both forms of construction operate in the same or a similar way to produce the desired result. The doctrine of Corning v. Burden, 15 How. 252, is familiar, that "it is for the discovery or invention of some practicable method or means of producing a beneficial result or

effect that a patent is granted, and not for the result or effect itself." See Westinghouse v. Power-Brake Co., 170 U. S. 537, 555, 18 Sup. Ct. 707.

While further discussion is not necessary to a determination of the case as presented, it may be of use to consider to what extent the claims are limited by the amendments made to meet the rulings of the patent office. On that subject it is to be observed that the doctrines of equitable estoppel, or estoppel in pais, invoked in behalf of the appellee, are not involved or applicable. The estoppel which arises in such cases is of the nature of estoppel by contract, and its scope in a particular case, like the meaning of a contract, is a matter of the interpretation and construction of the terms used according to their fair meaning. In Ball & Socket Fastener Co. v. Ball Glove-Fastening Co., 5 U. S. App. 588, 651, 7 C. C. A. 504, and 58 Fed. 824, it was said, "The rule touching the effect of such amendments has been several times laid down by the supreme court in patent cases, although it is only a peculiar application of the general principles of law relating to the interpretation of instruments." At the same time, as was said in Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 21 U. S. App. 244, 370, 10 C. C. A. 203, and 61 Fed. 967, "it defeats the very essence of this rule to extend it to what was inserted inadvertently, or to push the construction of what was thus inserted in one direction, when it is plain from the whole transaction that the parties inserting were looking in another." There is no danger of such a mistake of the meaning of what was done in the case before us. That there was an intelligent purpose, compelled by the explicit requirement of the patent office, to make the tapering bore the distinctive feature of the combination, there is no room for doubt; and, not stopping at that, the possibility of substituting an asbestos or other filling in a tube of uniform bore was denied. Whatever, therefore, might otherwise have been the scope of the patent, it cannot be allowed to include what was expressly and so clearly excluded. The same considerations forbid that the fourteenth claim should be deemed to have in this respect a wider scope. These views seeming to exclude the possibility of evidence to sustain the charge of infringement, the decree below is reversed, and the cause remanded, with direction to dismiss the bill.