PANZL v. BATTLE ISLAND PAPER CO. et al.

(Circuit Court of Appeals, Second Circuit. April 19, 1905.)

1. PATENTS—INVENTION—COMPOSITION FOR LINING PULP DIGESTERS.

The Panzl patent, No. 644,367, for a composition of material for lining vessels used for storing or boiling corrosive liquids, intended for a lining for pulp digesters, which should be acid proof, in claim 3 describes a combination in new and specified proportions and in a new manner of well-known materials which produces a new and superior composition, and was not anticipated, and discloses invention. Claims 1 and 2 are void for lack of invention in view of the prior art, or because they fail to specify the proportions of the ingredients entering into the composition, and do not, therefore, acquaint those skilled in the art with the necessary information to enable them to practice the invention without experimenting. Claim 3 also *held* infringed.

2. SAME—CHEMICAL COMPOSITION—NECESSITY OF SPECIFYING PROPORTIONS.

A patent for a chemical composition must not only give the names of the ingredients used in making the composition, but also the proportion

of each, so that the invention may be practiced by those skilled in the art without further experimentation.

3. SAME—DEFINITION OF TERMS—"CHAMOTTE."

The term "chamotte," as used in the arts and in the Panzl patent, No. 644,367, as an ingredient used in making an acid-resisting composition for lining pulp digesters, denotes a species of specially pure calcined clay, which must be silicate of alumina, and is not the equivalent of crushed fire brick, used in prior preparations, which may or may not have the chemical composition and properties of chamotte.

4. SAME—SUIT FOR INFRINGEMENT—REHEARING.

An application to reopen the case after final hearing in a suit for infringement to permit the taking of additional testimony on an issue of fact is properly denied where the evidence could have been produced on the hearing by the exercise of due diligence.

Appeal from the Circuit Court of the United States for the Northern District of New York.

For opinion below, see 132 Fed. 607.

This cause comes here upon appeal by defendant from an interlocutory decree of the United States Circuit Court for the Northern District of New York granting an injunction against infringement of patent No. 644,367, granted to Romedius Panzl February 27, 1900, for improvements in composition of material for lining of vessels used for storing or boiling of corrosive liquids. The opinion below is reported in 132 Fed. 607.

Howard P. Denison, for appellants.

Henry Schreiter, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The court below has exhaustively discussed the prior art and explained its bearing upon the patent in suit, and in stating its reasons for the conclusions reached has fairly presented the issues of validity and infringement and the arguments by which the contentions of the parties are supported. The controlling questions herein may be summarized as follows: (1) The definition of chamotte. (2) The disclosures of the prior art. (3) Infringement.

As to the meaning of the word "chamotte," the court says, inter alia, as follows:

"The testimony of the expert witnesses is conflicting. The technical signification and classification of chamotte as a particular ingredient for lining is left in doubt by the evidence, and reference has therefore been had to standard dictionaries, publications, and books of science for such information as in the judgment of the court was necessary to clarify the disputed point."

Then, quoting from various definitions, the court says:

"The testimony of complainant's expert witness supports this definition. He testifies that when speaking of chamotte he means calcined clay, which is essentially silicate of alumina and water. In its preparation the water or moisture is driven out by heating, so as to produce contraction and baking of the clay. He further adds that ordinary fire brick is not chamotte, and only becomes such after undergoing the process outlined. * * * According to the expert witnesses for defendants, chamotte is merely crushed fire brick—that is, clay without sand, heated to a high temperature—and hence is the identical material referred to as fire brick in the patents of Wenzl Kellner, No. 4,959, Norton, No. 480,934, and others contained in the record. If the consideration given to the word 'chamotte' in order to ascertain its exact meaning and import impelled the acceptance of the view of the defendants'

138 F.—4

expert witnesses, the invalidity of the Panzl patent because of the prior art would seem plain, and the combination of the materials mentioned in the claims would lack invention. But it is apparent from the definitions above quoted that the term 'chamotte' technically is accorded a wider signification than that claimed by the defendants, and that it is not restricted to ordinary fire brick with which furnaces are lined, though in its classification burnt clay or fire brick is included."

The appellant contends that this conclusion is not justified, because complainant's expert testified as follows:

"X-Q. 49. Will you please state what you understand by the term 'chamotte,' as found in the claims in the patent in suit? A. I mean thereby calcined clay which is essentially silicate of alumina and water. In preparing the chamotte the process simply consists in driving out the water and producing such temperature that the clay contracts and bakes together. X-Q. 50. Then I am to understand that ordinary good quality of clay calcined or hydrated forms what is termed chamotte? A. After it has undergone the process roughly outlined."

Appellant claims that upon the strength of this definition by complainant's expert Endemann it directed its proofs to show that chamotte was merely fire brick, and was shown in the prior art in compositions identical with that covered by the patent in suit, and that the court was not justified in giving to the word "chamotte" an interpretation wider than that stated by complainant's expert and derived from dictionaries and other publications.

The admission of an expert witness is, of course, entitled to weight in the interpretation of technical terms employed in a patent. But the court is not necessarily concluded by such interpretation when other satisfactory evidence is available. Furthermore, an examination of the whole testimony of the expert Endemann serves to explain the foregoing particular statement relied on as an admission, and to show that he merely meant that chamotte was a calcined clay, which is essentially silicate of alumina and water, and that a calcined clay brick may or may not be chamotte, according to whether it has the porosity and chemical affinities essential to constitute the product known as "chamotte." His understanding of the word is shown by the following testimony:

"X-Q. 77. Would a composition for lining digesters, as contemplated by the patent in suit, consisting of silicate of soda, cement, water, fire brick, and sand, be embraced or contemplated, in your opinion, by either or any of the claims of the patent in suit? A. Fire brick is an exceedingly loose description, inasmuch as fire bricks vary considerably in composition. We have even fire bricks which do not contain any clay at all, like those which are made of magnesia."

So far as this witness is concerned, therefore, the term "fire bricks" covers a class of articles alike in use, but variant in composition, and is broad enough to include chamotte; but the word "chamotte" denotes a species of specially pure calcined clay, but which must be silicate of alumina, and which, by reason of its properties, is peculiarly adapted for the chemical and mechanical actions and results necessary in order to produce the acid-proof, unshrinkable composition of the patent in suit. In these circumstances, the court has examined the record and standard publications, and has found therein confirmation of the contention that chamotte

is a special substance well known in the art, and that ordinary fire brick does not possess the properties of chamotte. Inasmuch, therefore, as the term "fire brick," if used in the patent, would not have sufficiently identified this peculiar product to enable one skilled in the art to produce the patented product, but would have obliged him to experiment with the various materials known under said name, we think the patentee was justified in the use of said word; that it may even have been necessary to a full disclosure of his alleged invention; and that, in view of the evidence, the court correctly found that fire brick was not necessarily the equivalent of chamotte.

Appellant, after the decision of the case, moved to reopen it, in order to show that it used only fire brick, and did not use chamotte, within the meaning given to it by the court in its opinion. This motion was rightly denied. The new evidence sought to be introduced might have been brought before the court at the original hearing. Pittsburgh Reduction Co. v. Cowles Electric Smelting & Aluminum Co. (C. C.) 64 Fed. 125, and cases cited.

It is further contended that the patent is invalid, in view of the prior art. After a careful analysis of the prior patents, the court below reached the conclusion that none of them showed how to so combine the materials of the patent in suit as to produce mono-calcium silicate, free from di- or tri-calcium silicate, and that, as this was essential in order to obtain an acid-proof composition, and complainant alone had thus succeeded where the others had failed, his patent was valid. The court says:

"The process of mixing hydraulic cement and silicate of soda for the purpose of making an adhesive and chemical resisting lining was very well known at the date of the patent in suit. The characteristic feature, however, of the Panzl combination rests in compounding the ingredients of the process in certain proportions so that the chemical reaction referred to will be obtained, and an acid-proof lining be produced. The conception of this combination resulted from experiment, comparisons with the prior art, and practical tests with various compositions in nature. Unless anticipated, it is entitled to protection. Little doubt arises that the process described in the patent was an advance or addition to those already known. Others were endeavoring to invent a process which would prevent the disintegration of boilers by corrosive fluids. All seem to have failed, except the patentee in suit."

Counsel for appellant chiefly relies on Swedish patent to Wenzl of November 13, 1888, for interior coatings for cellulose boilers, which, he says, "completely negatives any possible invention of either or any of the claims of the patent in suit." All that this patent discloses in regard to said coating is that:

"The protecting mass consists of a mixture of about one part, by weight, of cement, and two parts, by weight, of fire brick or brick dust and sand, or a mixture of the two, or all three of these materials. The mixture is stirred in a solution of about 36° B. strong soda water glass in proportion of about two parts of the mixture to one part of water glass forming a base with which the interior of the boiler is coated."

The essential elements, chamotte and quartz or pulverized glass and slate, are not suggested; no specific mixture of ingredients is indicated as especially adapted to secure the result; the cement may be mixed with either or all or any two of the other materials, and

in the latter cases no proportions are given. That Wenzl failed to disclose the composition of the patent in suit is affirmatively shown by his assumption that fire brick and brick dust and sand are equivalents. The patentee herein has insisted upon the necessity of using a certain specific kind of fire brick, namely, chamotte, in combination with a specific kind of sand, namely, crushed quartz, or a certain described equivalent, and has insisted that the result can only be obtained by a combination of said specific materials. The conclusion of the court below as to the Wenzl patent is stated as follows:

"Although defendants claim that the compounded material of the Wenzl patent contains precisely the same ingredients as the claims in suit, nevertheless, from what has been said regarding the term 'chamotte,' it is manifest that such ingredient, as an essential element, is absent in the Wenzl process. Moreover, Wenzl does not clearly indicate the proportions of materials or definitely specify the particular materials to be compounded. * * * I am, impressed by Dr. Endemann's analysis of the Wenzl patent. He testifies that by the process there described mono-calcium silicate is not produced, and the mixture of the ingredients does not cause the chemical reaction necessary to achieve the results attained by the Panzl process. The practical tests made by defendant's expert witnesses would seem to support the complainant's position. Hydraulic cement, chamotte, and quartz and sand appear to have been used in the proportions of the patent in suit. The evidence shows that some of the materials specified in the Panzl patent were used in making these tests, and that the fire brick mentioned in the Wenzl patent was treated as the equivalent to the chamotte, sand the equivalent to quartz, and the materials were compounded in the precise proportions of the patent in suit."

We concur in this conclusion.

The appellant lays much stress on the opinion of the Court of Appeals for the First Circuit in sustaining reissue patent No. 11,282, granted to George F. Russell in 1892, for a pulp digester. American Sulphite Pulp Co. v. Howland Falls Pulp Co., 80 Fed. 395, 25 C. C. A. 500. But this patent merely covers a cement lining, applied, when soft, to a pulp digester, and which, when it hardened, mechanically protected the shell of the digester by its cohesive, adhesive, and acid-resisting powers from the corroding influence of the solution. There is no suggestion either in the patent or in the opinion of the court that this patent is for any acid-proof chemical combination, and the claims merely cover "a continuous lining or coat of cement." This patent, therefore, has no bearing upon the issues herein.

The court below in its opinion did not distinguish or separately discuss the three claims in suit, but found they were all valid. In view of the prior art and the testimony of complainant's witness, we are unable to concur in this conclusion as to the first and second claims. Complainant's expert admits that all the substances mentioned in the patent have been already used in various combinations in this art for this purpose; that the essence of the patented invention is such a combination as will insure the production of mono-calcium silicate; that "the formation of the mono-calcium silicate is, so to say, the bull's eye and the main feature of the Panzl invention"; that its production is a question of proportions of the ingredients; and that a publication describing a mixture contain-

ing the ingredients named in the patent in suit, but "stating no proportions, is in matters of this kind practically useless." He further says, in attempting to differentiate Kellner patent No. 15,931, that if in the Kellner composition mono-calcium silicate could be produced, it might, in that respect, be compared with the substitute composition of the patent in suit, but that it cannot produce this "prominent feature" because of the weakness of the solution of silicate of soda. And while he asserts that this patent does not contain any chamotte, yet it does include among its ingredients both silicate of alumina, which becomes chamotte when baked, and burnt clay tiles.

The application of these admissions and arguments of complainant's expert to the patent in suit is fatal to its first and second claims. They are drawn to cover a combination of substances, old in the art, the patentability of which is asserted upon the theory that thereby a new result, mono-calcium silicate, is produced. No proportions are given, however, and it would require experiment to determine what proportions were necessary to secure this result.

Inasmuch as the discovery of a new substance by means of chemical combination is empirical, and results from experiment, the law requires that the description in a patent for such discovery should be specially clear and distinct. Tyler v. Boston, 7 Wall. 327, 19 L. Ed. 93. "When the specification of a new composition of matter gives only the names of the substances which are to be mixed together, without stating any relative proportion, undoubtedly it would be the duty of the court to declare the patent void; and the same rule would prevail when it was apparent that the proportions were stated ambiguously or vaguely, for in such cases it would be evident on the face of the specification that no one could use the invention without first ascertaining by experiment the exact proportion of the different ingredients required to produce the result intended to be obtained. The specification must be in such full, clear, and exact terms as to enable any one skilled in the art to which it appertains to compound and use the invention; that is to say, to compound and use it without any experiments of his own. Moody v. Fiske, 2 Mason, 112, 119 Fed. Cas. No. 9,745." Matheson v. Campbell (C. C.) 69 Fed. 597, 603. An inventor cannot "speculate on the equivalents of his claimed invention, and thereby oblige the public to resort to experiments in order to determine the scope of the claims of his patent." Matheson v. Campbell, 78 Fed. 910, 916, 24 C. C. A. 384. These claims must be held invalid, therefore, either because it does not appear that they disclose any invention, in view of the prior art, or because they fail to acquaint those skilled in the art with the necessary information to enable them to practice the invention without experiment. It is proved, however, that by compounding the ingredients in the proportions stated in the third claim a new and highly useful result is obtained, and that the discovery and disclosure of such mixture and its proportions entitle the patentee to the benefit thereof. The third claim is sustained. Infringement of this claim, under the interpretation given by the court to the word "chamotte," is suf-

ficiently shown by the admissions of defendant's witnesses and by analysis of specimens of its lining.

The decree of the court below is reversed as to claims 1 and 2, and affirmed as to claim 3, without costs in this court to either party.