### AMERICAN SULPHITE PULP CO. v. HINCKLEY FIBRE CO.

(District Court, N. D. New York. October 8, 1914.)

1. PATENTS (§ 283*)—SUIT IN EQUITY FOR INFRINGEMENT—INJUNCTION—EXPIRATION OF PATENT.

An injunction will not be granted against the use of a machine or structure which infringed a patent during its life after the patent has expired, even though it was made and put in use by the owner prior to such expiration.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–450, 452; Dec. Dig. § 283.*]

2. PATENTS (§ 178*)—EQUIVALENTS—LATER INVENTIONS.
  A patent does not cover equivalents not known at the time and which were the result of later invention.
  [Ed. Note.—For other cases, see Patents, Cent. Dig. § 254½; Dec. Dig. § 178.*]

3. PATENTS (§ 328*)—INFRINGEMENT—PULP DIGESTER.
  The Russell reissue patent, No. 11,282 (original No. 445,235), for a pulp-digester having an acid-resisting lining of cement or material in the nature of cement, *held* not infringed by a digester lined with the composition of the Panzl patent, No. 644,367, which is not a cement, and was unknown to Russell, or to any one, until its invention subsequent to his patent.

In Equity. Suit by the American Sulphite Pulp Company against the Hinckley Fibre Company. On final hearing. Decree for defendant.

Suit in equity for an injunction to restrain defendant from using certain structures (pulp-digesters) alleged to infringe United States letters patent No. 11,282, dated November 15, 1892, and granted to George F. Russell, assignor to the complainant, and for an accounting. The patent expired shortly prior to the commencement of this action, but the structures alleged to infringe were erected prior to the expiration of the patent.

Frank T. Benner and Alex. P. Browne, both of Boston, Mass., for complainant.
Henry Schreiter, of New York City, for defendant.

RAY, District Judge. In the case of American Sulphite Pulp Company v. St. Regis Paper Company (and four other cases) 217 Fed. 51, this court herewith hands down its opinion, following the Circuit Court of Appeals in this (the Second) circuit, holding the Russell patent valid and infringed and awarding an accounting. Reference is made to that opinion for a description of the patent and structure covered thereby.

This case presents the additional features: (1) That an injunction is demanded against the use of the infringing device alleged to infringe, notwithstanding the expiration of the patent prior to final hearing; and (2) the cementitious material used to form the cement lining of the digesters is itself patented by United States letters patent to one Panzl, No. 644,367, issued February 27, 1900, and under which defendant is licensed. This patent is for a "composition of material for lining vessels used for storing or boiling corrosive liquids," and is antedated by the Russell patent some eight years.

[1] I do not think an injunction should issue against the use of a machine or structure which infringed a patent during its life after the patent has expired, even if made and put in use prior to the expiration of the patent. By issuing a patent the United States secures to the patentee and his sole licensee the exclusive right to make, use, and vend the patented thing during the life of the patent and to exclude others from making, using, or selling the same. The right to an injunction to restrain others from making, using, and vending is equitable in its nature and may or may not be availed of. It is usually accompanied by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an accounting and an award of damages and profits as compensation for the infringement. The court does not and cannot take possession of or destroy the infringing article. The patentee or licensee may content himself with a suit at law to recover money damages. When the patent expires, the discovery or invention becomes common property; that is, all persons have the right to make, use, and sell articles made in accordance therewith. The discovery or invention is then given to the public. An infringing article belongs to the maker, or the one for whom it was made, and its use or sale after the patent has expired is not prohibited by any statute. After the patent has expired, the use of the thing, or its sale, offends against no law, or the rights of any person. The sole right or monopoly of the patentee in the invention, and of his licensee, has then ceased to exist, except to recover damages and profits for past infringement, and he has no ownership or interest in the article which during the life of the patent infringed, or in its use. Its use after the patent expires infringes no right of any person. Its use damages no person. He can recover damages or profits up to the time of the expiration of the patent, and no longer. If an injunction is granted during the life of the patent, and is obeyed, no damages or profits accrue after the issue of such injunction, and the recovery of damages, etc., is measured in time by the period between the commencement of the infringement and the issue of the injunction.

The law imposes no penalty for the infringement, aside from a recovery of damages and profits. The law does not condemn the infringing article or deprive the infringer of his property therein. It simply says he shall not use or sell it during the life of the patent. He may not use it while the patent is in force, but may when the sole rights of the patentee under the patent cease to exist. If it should appear that an infringer had on hand a quantity of infringing articles made prior to the expiration of the patent, and which he might sell thereafter, and that the owner of the patent could not recover adequate damages in a suit at law, possibly equity would restrain their sale on the ground of want of adequate remedy at law. But if he could have full and complete or adequate remedy at law, why and by what authority could he in effect substantially destroy the property right of the owner in said articles— compel him to reduce them to mere junk. I think the well-considered authorities are against the contention of the complainant. In Westinghouse v. Carpenter (C. C.) 43 Fed. 894, on a motion, during the pendency of an action for infringement, to dissolve the injunction granted pendente lite, Mr. Justice Miller of the Supreme Court of the United States, said:

"We are of the opinion that the motion ought to be granted. The attorney for the plaintiff practically concedes, from the decisions of the courts on that subject, that the motion to dissolve the injunction should be granted on account of the expiration of the patent, which expired a few days ago with the expiration of a prior English patent. He, however, insists that the injunction should be continued as to the use and sale of those articles which were manufactured and sold while the patent was alive, the manufacture of which was an infringement of this patent; that he should have the benefit of having forbidden them while the patent was in existence; and that the injunction should be continued as to the selling or using of those manufactures, notwithstanding the expiration of the patent. We are of the opinion that

with the expiration of his patent the plaintiff's right to forbid anybody to make, sell, or use the articles to which this invention refers expires. His monopoly is continued for 17 years by law, or whatever period the law allows his patent to run. That monopoly is against the making, selling, or using of such articles. He has the benefit of that monopoly, and has had that benefit with regard to those articles in which he now asks to be further protected. He may recover the damages he has sustained, in this suit, which is still pending in this court. He may recover for the damages which were inflicted before the injunction was brought. And he still asks that the court shall enjoin the sale and use of those articles for which he expects to get damages. Speaking for myself, and also for Judge Love, I do not believe that is the true doctrine on this subject."

See Miller v. Schwarner (C. C.) 130 Fed. 561, 562, 563. Amongst other things the court there says:

"The conclusion reached is that under section 4921 (U. S. Comp. St. 1901, p. 3395) equity will entertain suits for infringement of patents only when the bill shows that a part of the complainant's remedy is an injunction, and, if the patent has expired, the injunction will not be granted, and the case should not be retained in equity for an accounting and damages only."

Section 4921, R. S. U. S., says:

"Sec. 4921. The several courts vested with jurisdiction of cases arising under the patent laws shall have power to grant injunctions according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable. * * * "

The use by the owner thereof of a digester lined with a structure which infringes a valid patent after such patent has expired is not the violation of any right secured by patent. If an infringer during the life of the patent makes a quantity of articles for sale generally as an article of merchandise, in an action in equity brought during the life of the patent the infringing maker may be enjoined from using or selling same. He is liable in damages if he makes, sells, or uses. But when the patent expires such injunction will usually be vacated, even during the pendency of the action. Use and sale thereafter of such article is not "the violation of any right secured by patent." An injunction continued thereafter must be based on some equitable ground other than the mere infringement of the patent. If the infringer, in anticipation of the expiration of the patent, is making large quantities of the infringing article, or a large number of the infringing structures, the remedy of the owner of the patent is to enjoin such making, and he may recover damages, if any, for such making and for the wrong thereafter consummated by selling same, in my judgment. If it could be shown that a threatened sale thereafter of such infringing articles (made before the expiration of the patent) could not be adequately compensated for in damages, there may be a right to an injunction to restrain such sale even after the expiration of the patent.

But such is not this case. Here the owner of the patent on an accounting will recover all the damages and for all the loss of profits he is entitled to and up to the expiration of the patent, but he cannot enjoin the owner and user of the digester from using it now after the patent has expired and compel him to tear out and replace his lining or lose his digester. In certain reported cases a combination patent had been infringed, and the combination broken up, dismantled, and re-

stored after the patent expired. This restoration was not an infringement. Johnson v. Brooklyn & C. R. Co. (C. C.) 37 Fed. 147, 2 L. R. A. 489. It was there held by Lacombe, C. J.:

"An injunction against the infringement of a patent for an invention consisting of a combination of known appliances is not violated by using the combination after the expiration of the patent."

There was a time when our patent laws gave as a remedy for the violation of our patent laws by infringement an action at law upon the case for damages and also forfeited the infringing article. Act April 10, 1790, c. 7, 1 Stat. 109. This was changed by the Act Feb. 21, 1793, c. 11, 1 Stat. 318. This was changed by Act April 17, 1800, c. 25, 2 Stat. 37. In Act July 8, 1870, c. 230, 16 Stat. 198, our patent laws were revised and consolidated. By Act Feb. 15, 1819, c. 19, 3 Stat. 481, jurisdiction in equity was conferred. Since 1793 there has been no power to confiscate or forfeit the infringing article. Damages may be trebled, however. See Root v. Railway Co., 105 U. S. 189, 26 L. Ed. 975. There is no existing power in the courts to forfeit or destroy the infringing article (I do not refer to our copyright laws), either directly or indirectly, during the life of the patent, and clearly it cannot in effect be destroyed or rendered useless to the owner thereafter by enjoining its use thereafter. In W. W. Sly Mfg. Co. v. Central Iron Works, 201 Fed. 683, 120 C. C. A. 264 (C. C. A., 7th Circuit), the court said:

"Equity jurisdiction in patent cases depends on the right to an injunction at the time suit is commenced. If it appears, therefore, that no facts then existed supporting the right to an injunction, and that the patent sued on will expire before any final decree can be made, the remedy at law is entirely adequate, and the equity suit, since it can avail nothing, must be dismissed, because there is no equity jurisdiction."

[2, 3] The next proposition is that there is no infringement by defendant in making and using in a digester a continuous, homogeneous, cementitious digester lining made of a cementitious mixture discovered or invented and patented after the issue of the patent to Russell. In relation to this Russell patent, the Circuit Court of Appeals, First Circuit, in 80 Fed. 395, 25 C. C. A. 500, said:

"Some of these compositions stood the test better, made better linings, and did the work more successfully, than others; and as to such as he used, such as he described, and such as those skilled in the art could understand, he is entitled to protection. At this time he had advanced the art in the sulphite process line, not in a slight degree, but in a high degree. He was an inventor, not in a narrow sense, but in a broad sense, and as such was entitled to a patent covering his homogeneous structural lining, his adaptation of the forces in matter which he had discovered, and the cementitious compositions in the nature of cement with which he had successfully experimented, and which he had adapted to the required conditions and use, as well as those which he described with sufficient clearness to be understood by persons skilled in the art, and such as would naturally develop, in the growth of the art, *without invention*. We look at this as an invention of an improved structure, with a devised and described process for creating it and putting it in operation in connection with a new and pressing emergency, and not for any particular ingredient or composition. It is true, the ingredients must possess certain described characteristics; but after all the ingredients are only a part of the invention involved in the construction of the inner part of the shell, and, in order to answer the prescribed purpose, they must possess cer-

tain described plastic, adhesive, cohesive, and acid-resisting characteristics. * * * Thus, it would seem to be clear that the inventor intended to cover *acid-resisting cementitious mixtures*, which could be applied in plastic condition, which would adhere to the outer shell, become a part of it, and so compactly form and harden under the pressure and process of application which he described as to prevent the acid from reaching the iron; and while describing commercial cement as a convenient material, and while he expressed a preference for Portland cement made plastic with water, as to other cementitious mixtures he left the acid-resisting and adhesive qualities to be ascertained by the practical chemist, or other 'person skilled in the art or science to which it' appertained. * * * And we think, upon principle and authority, that Russell, having discovered that cement material generally possesses the qualities required for his conception of a *homogeneous* digester lining, should not be limited to such materials in the class of cementitious mixtures as he had chemically and commercially isolated as individuals, but that his claims and description should be construed as including all cementitious mixtures which ordinary skilled practical chemists might be expected to find as answering the requirements of the described conditions. or such as would naturally develop in the growth of the art without invention. In our opinion, the patent is valid, and protection should be commensurate with the invention stated in the claims and the discovery and process described in the specification; and *in our view the patent covers homogeneous structural linings composed of adhesive, acid-resisting materials in the nature of cement, which possess* the required qualities described in the specification."

The Circuit Court of Appeals in this circuit, in the De Grasse Paper Co. Case, 157 Fed. at page 663, 87 C. C. A. at page 263, quote and approve that clause of the opinion in the Howland Falls Pulp Co. Case, above quoted from, which contains this statement:

"Should be construed as including all cementitious mixtures which ordinary skilled, practical chemists might be expected to find as answering the requirements of the described conditions, or such as would naturally develop in the growth of the art *without invention*."

In view of this holding by the Circuit Court of Appeals in both the First and the Second Circuits, it seems to me that this patented cement or cementitious composition is not within the conception or invention of Russell. If the patented cementitious composition used by defendant is not within the claims of the patent, how can defendant's continuous and homogeneous cement lining made thereof be within the claims, or how can such a lining made of such materials be an infringement? The idea or conception of a continuous and homogeneous lining of lead and also one of acid-proof brick laid in cement, or cement mortar, was old when Russell came into the field. The Circuit Court of Appeals in the First Circuit expressly held that the patent does not cover or include a digester with a lining made of a material or mixture *other than cement or of the nature of cement,* and hence that any one is at liberty to line a digester with a continuous homogeneous lining of other material. The court said:

"The inventor, in his second claim, which is substantially the same as the first, refers to his 'continuous lining or coat, *B*, of cement, substantially as described.' Now, what is the effect of this? Doubtless it is to limit his claim to a pulp digester with a lining of cement. It does not cover structures with linings of other material, *but limits itself to a cement-lined structure* with an outer shell, described in the specification as a metal shell, and a lining described in the specification as of *cement mixtures.* In other words, he *limits his patent to a cement-lined structure, and, by express and necessary*

*reference to his specification and diagram,* describes the material, the process, and the operative means for constructing the improved pulp digester as a whole; and, while his reference to the specification may not enlarge or extend the invention claimed, it may and must be examined in order to understand the manner of making and constructing the shell and compounding the cement materials necessary to reduce his conception to use."

The patented cementitious material of which defendant's lining, is made is a *new* and useful composition, a *new* and useful discovery, and discloses invention. The cementitious composition of defendant's digester lining is not one "which ordinary skilled practical chemists might be expected to find as answering the requirements of the described conditions." If it is, then it is not a patentable composition. Nor is it "such [a cementitious mixture] as would naturally develop in the growth of the art *without invention."* Defendant's mixture has been developed in the growth of the art, but it was the result or product of invention. Hence the patent therefor.

The Panzl composition was made the subject of judicial inquiry and determination in Panzl v. Battle Island Paper Co., 138 Fed. 48, 52, 70 C. C. A. 474, 478, where this Russell patent was also considered. The Circuit Court of Appeals, per Townsend, C. J., said:

"The appellant lays much stress on the opinion of the Court of Appeals for the First Circuit in sustaining reissue patent No. 11,282, granted to George F. Russell in 1892, for a pulp-digester. American Sulphite Pulp Co. v. Howland Falls Pulp Co., 80 Fed. 395, 25 C. C. A. 500. But this patent merely covers·a cement lining, applied, when soft, to a pulp-digester, and which, when it hardened, mechanically protected the shell of the digester by its cohesive, adhesive, and acid-resisting powers from the corroding influence of the solution. There is no suggestion either in the patent or in the opinion of the court that this patent is for any acid-proof chemical combination, and the claims merely cover 'a continuous lining or coat of cement.' This patent, therefore, has no bearing upon the issues herein."

This excludes the Panzl lining as not being within the claims of the Russell patent. It is entirely different from anything mentioned, referred to, or described by Russell. The claim of the Panzl patent (claim 3) held valid reads as follows:

"A composition of matter for acid proof lining of boilers, tanks and similar vessels, composed of 26 per cent. of hydraulic cement, 12 per cent. chamotte, 21 per cent. of quartz, and of a suitable quantity of diluted silicate of soda."

In a broad sense this composition of matter, used in defendant's digesters, is more or less cementitious, as it contains 26 per cent. of hydraulic cement; but in the opinion of this court this is not sufficient as used in the defendant's structures to bring them within the claim of the Russell patent, which had, when this action was commenced, a layer of composition material about one inch in thickness composed, it is conceded in complainant's brief, of that described in the Panzl patent and above set forth. Then came a course of common red brick 2¼ inches thick laid up edgewise, then another layer of the above-named Panzl composition about one inch thick, and next thereto a course of acid-proof digester tile laid up in the same composition. I do not think this a continuous lining or coat *of cement,* substantially as described in the claims of the Russell patent. This Panzl composition was not described in the patent at all, substantially or otherwise.

The patent gave no information as to such a composition or lining, and no one could have made a lining composed thereof as it was unknown. All this appears from the extracts from the decisions of the Circuit Court of Appeals in both the First and Second Circuits hereinbefore set forth. Panzl v. Battle Island Paper Co., supra, is reported below in 132 Fed. 607. The Panzl composition was used for lining a pulp digester, and the Russell lining was urged as an anticipation; but this contention, we have seen, was held untenable both at circuit and in the Circuit Court of Appeals. In Gill v. Wells, 89 U. S. (22 Wall.) 1, 22 L. Ed. 699, it is held:

"Whether one device is or is not an equivalent for another is usually a question of fact, and often becomes a difficult issue to decide. * * * Questions of the kind usually arise in comparing the machine of the defendant in a suit for infringement with that of the plaintiff, and the rule is that if the defendant omits entirely one of the ingredients of the plaintiff's combination, without substituting any other, he does not infringe, and if he substitutes another in the place of the one omitted, which *is new* or which performs a substantially different function, or even if it is old, but was not known at the date of the plaintiff's patent as a proper substitute for the omitted ingredient, he does not infringe. * * * Alterations * * * in a combination, which are merely formal, do not constitute a defense to the charge of infringement, as the inventor of a new and useful combination of old ingredients is as much entitled to claim equivalents as any other class of inventors; but they cannot suppress subsequent improvements which are substantially different from their inventions, whether the new improvement consists in a new combination of the same ingredients, or of some newly discovered ingredient, or even of some old ingredient performing some new function not known at the date of the letters patent as a proper substitute for the ingredient withdrawn."

In Imhaeuser v. Buerk, 101 U. S. 647, 25 L. Ed. 945, it is held:

"A party who merely substitutes another old ingredient for one of the ingredients of the patented combination is an infringer, if the substitute performs the same function as the ingredient for which it is so substituted, and it appears that it was well known at the date of the patent that it was adaptable to that use."

In Wicke v. Ostrum, 103 U. S. 461, 26 L. Ed. 409, it is held:

An inventor is entitled "to the benefit of all the mechanical equivalents of his several elements, known at the time of his invention, if used in the same combination."

In Rowell v. Lindsey, 113 U. S. 97, 5 Sup. Ct. 507, 28 L. Ed. 906, it is held:

"A combination may be infringed when some of the elements are employed, and for the others mechanical equivalents are used which were known to be such at the time when the patent was granted."

In Magic v. Economy, 97 Fed. 87, 38 C. C. A. 56, it was held: "A patent covers only known equivalents." See, also, Brown v. Stilwell, 57 Fed. 731, 741, 6 C. C. A. 528.

In Dryfoos v. Wiese, 124 U. S. 32, 8 Sup. Ct. 354, 31 L. Ed. 362, it is held:

"An inventor is not entitled, when his invention covers a particular machine for performing a given function, to claim equivalency in every machine which performs the same function."

The fact that both the Russell lining and the Panzl lining perform the same function does not establish equivalency. If these cases are good law, then defendant here does not infringe, as it has left out the continuous cement lining of Russell, and substituted, if its structures have a cementitious lining, *not an improved cement* but *a new composition*, and one which protects the lining in a better way—a composition *entirely unknown* to any one when the Russell patent was applied for and granted, and not an equivalent for the Russell lining or cement, which complainant is entitled to claim or assert is an equivalent.

Following the decisions in this and the First circuits, this court holds that, while the Russell patent is valid for what it covers and claims, the defendant does not infringe.

There is nothing in Herman v. Youngstown, etc., 191 Fed. 579, 112 C. C. A. 185, or in Murray v. Detroit Wire Spring Co., 206 Fed. 465, 124 C. C. A. 371, in conflict with or contrary to these views. In view of the cement lining of the Russell patent and what his patent covers or claims, and the lining of defendant's digesters made of *a new* and patented composition not known to Russell or covered by his patent, or its claims, not an improved cement, the defendants do not use the Russell cement lining, or an equivalent therefor, and hence do not infringe. If defendants were using an *improved* cement lining (like or similar to Russell's), an improvement on Russell, and the Panzl patent were for such improvement, then there would be a use of Russell's cement, or of Russell's cement lining, with an improvement, and in such case the Panzl patent would be no protection against infringement. The Panzl patented composition of which defendant's lining is made being wholly a *new discovery, a new mixture or composition*, not known to Russell, or to any one, at the time his patent was granted, and not an improvement, there is no substitution of an equivalent, and all the other elements being old, and such as the defendants had and have the right to use in combination, they did not infringe, as they did not use the Russell combination changed in form by the substitution of an equivalent for the cement lining. When a person has a valid patent for a combination composed of entirely old elements, but combined in a new way to produce a new and a useful result, or an improved result, or a patent for a new combination of old elements and one new element, he infringes who substitutes for one of such elements something which is an equivalent, operating in substantially the same way and producing substantially the same result; but he does not infringe such combination who substitutes for one of such elements a new and an unknown element—that is, one not known when the patent was granted, but discovered, composed, and compounded or constructed and patented thereafter—and the fact that it is patented is evidence that the composition is new. In this case, the proof shows, and the court finds, and it has been judicially determined in prior cases, that the Panzl composition is *entirely new*, not an improved composition. It has been held that Russell's composition did not and does not anticipate Panzl for the reason stated, not for the reason that Panzl is an improvement on Russell. It is not

217 F.—5

contended that he who substitutes for one of the elements in a patented combination an equivalent known to be such at the time of the granting of the patent, but subsequently improved and a patent granted for the improvement, does not infringe. Here, as repeatedly stated, the Panzl patented composition is not an improvement, but an entirely new and a useful composition, and, Judge Townsend said, a chemical composition.

There will be a decree dismissing the bill, with costs.