TREIBACHER-CHEMISCHE WERKE GESELLSCHAFT MIT BE-
SCHRANKTER HAFTUNG v. ROESSLER & HASSLACHER
CHEMICAL CO.

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

No. 61.

1. PATENTS ⊜⟿328—VALIDITY AND INFRINGEMENT—PYROPHORIC ALLOY.
    The Welsbach patent, No. 837,017, for a pyrophoric alloy, is a pioneer
patent, and entitled to that liberal application of the doctrine of equiva-
lents which is usually accorded to such patents; also *held* infringed.

2. PATENTS ⊜⟿179—CONSTRUCTION OF TERMS—"IRON."
    In a claim in a pioneer patent for an alloy "containing cerium al-
loyed with iron," the word "iron" should be construed to mean iron or
its equivalent.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 255; Dec. Dig.
⊜⟿179.
    For other definitions, see Words and Phrases, Iron.]

3. PATENTS ⊜⟿179—CONSTRUCTION—EQUIVALENTS.
    A patentee is not confined to those equivalents to which he has ex-
pressly referred in his specification.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 255; Dec. Dig.
⊜⟿179.]

4. PATENTS ⊜⟿179—CONSTRUCTION—LIMITATION OF CLAIMS.
    Where a pioneer patentee claims an alloy of one or more rare earth
metals with one or more nonrare earth metals, he is not restricted to
named varieties of either, unless he has himself restricted his claim by
something in his specification.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 255; Dec. Dig.
⊜⟿179.]

5. PATENTS ⊜⟿179—SCOPE—EQUIVALENTS.
    In a patent for an alloy described as an alloy of cerium "with certain
other metals, in particular iron," the equivalency of other metals with
iron is to be found, not in their chemical structure, but in their functional
efficiency, when combined with cerium in a metallic alloy.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 255; Dec. Dig.
⊜⟿179.]

6. PATENTS ⊜⟿179—EQUIVALENTS.
    Although some nonrare earth metals will produce with cerium a less
efficient pyrophoric alloy than does iron, and although proportions must
be varied with different constituents to produce better results, each of
such metals, with the exception of those found in such small quantities
that they are known merely in the laboratory and have not been experi-
mented with, is a fair equivalent of iron in a patented compound.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 255; Dec. Dig.
⊜⟿179.]

7. WORDS AND PHRASES—"ALLOY."
    An "alloy" is a compound of two or more metals.

8. WORDS AND PHRASES—"PYROPHORIC ALLOY."
    A "pyrophoric alloy" is one which gives forth sparks on being rubbed
with a file or otherwise abraded.

Appeal from the District Court of the United States for the South-
ern District of New York.

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the Treibacher-Chemische Werke Gesellschaft mit Beschränkter Haftung against the Roessler & Hasslacher Chemical Company. Decree for complainant, and defendant appeals. Affirmed. For opinion below, see 214 Fed. 410.

Seabury C. Mastick, of New York City, for appellant.
James Hamilton, of New York City, for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [7, 8] The invention relates to manufacture of metallic alloys having pyrophoric action and their application to the purposes of ignition and illumination. The alloy gives forth sparks on being rubbed with a file or otherwise abraded; hence, the term "pyrophoric." The substance is of conceded commercial utility. Being an alloy, it is a compound of two or more metals. Out of 55 or more known and classified metals, 16 are recognized as "rare earth metals." These 16 are divided into three groups—the cerium group, the terbium group, and the ytterbium group. One of the metals in the alloy of the patent must be a rare earth metal, and, by the language of his specifications, the patentee states that "for the purposes of this invention the presence of the cerium is relied on as essential." Therefore, although there may be a mixture of rare earth metals in the one element of the combination, cerium, or at least, a metal of the cerium group, must be present. The testimony shows that an alloy composed solely of rare earth metals will not produce the pyrophoric alloy desired. The patent indicates this. The presence of one or more of the nonrare earth metals is essential. The specification states that the rare earth metal, cerium, becomes pyrophoric, if alloyed with certain other metals, in particular iron. It indicates that with about 30 per cent. of iron the alloy attains its maximum of pyrophoric energy; also that the iron can be partially replaced by nickel or cobalt, but, if entirely replaced by these, the pyrophoric property is considerably diminished.

The first claim reads:

1. "A pyrophoric alloy, containing cerium alloyed with iron, substantially as and for the purposes described."

The only other claim is identical, except that the iron is stated as being 30 per cent. of the compound. As defendant's compound consists of cerium with from 11 to 15 per cent. of magnesium, the first claim only is declared upon.

[1] Judge Hough, discussing the most pertinent references in the prior art, found that the patentee "taught how certainly and knowingly to produce that [a compound usefully pyrophoric] which had been observed, indeed, but not understood." We fully concur in this finding, and in the conclusion that this Welsbach patent covers a pioneer invention, and is entitled to that liberal application of the doctrine of equivalents which is usually accorded to such patents.

In defense it is contended that defendant's product, made, it is said, according to the process set forth in a patent to Huber (No. 967,775, issued August 16, 1910), is not a "metallic alloy" at all, but a chemical

compound. What defendant does is, first, to make a metallic alloy of cerium and magnesium (in the proportions of about 85 to 15). This alloy is then subjected to the action of hydrogen in a fire clay muffle under a temperature of 500 degrees to 600 degrees C. Changes are produced by this hydrogen treatment—the pyrophoric property of the compound is improved, possibly sufficiently to give validity to the Huber patent—and there is a conflict between the experts as to whether the resultant product has become a chemical compound or still remains a metallic alloy saturated with hydrogen. We concur in Judge Hough's finding that the weight of testimony supports the latter conclusion.

[2, 3] The claim in suit mentions only iron as the nonrare earth metal; but multitudinous authorities support the proposition that, in construing a pioneer patent such as this, "iron" should be held to mean "iron or its equivalent." In the specification two other metals, nickel and cobalt, are expressly referred to as equivalents; and defendant concedes that if a metallic alloy, in which these, or even manganese, which, like the other three, belongs to a group known as the "heavy" metals, has been substituted for the iron, it would infringe. But the doctrine of equivalents does not confine a patentee to equivalents which he has expressly referred to.

[4] Numerous authorities sustain the proposition that when, as here, a pioneer patentee claims an alloy of one or more rare earth metals with one or more nonrare earth metals, he is not restricted to named varieties of either, unless he has himself restricted his claim by something in his specifications, as Welsbach did, on the rare earth side of the combination, by the statement that in his alloy cerium is an essential. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717. Welsbach nowhere intimates that iron is essential; on the contrary, he states his invention is the alloy of cerium "with certain other metals, in particular iron."

[5] We are satisfied that the "equivalency" of other metals with iron is to be found, not in their chemical structure, but in their functional efficiency when combined with cerium in a metallic alloy. Cases in this circuit (Matheson v. Campbell, 78 Fed. 910, 24 C. C. A. 384; Rickards v. Du Bon [C. C.] 97 Fed. 96; Panzl v. Battle Island Paper Co., 138 Fed. 48, 70 C. C. A. 474) have indicated a qualification of this theory of broad equivalents. A patentee will not be allowed to maintain a claim for more than he has discovered and disclosed.

In the first of these cases the claim was for a dyestuff as a new product. The patentee described a special process by which the product was obtained, using therein a specified sulpho acid. He stated as his discovery, invention, and disclosure that "any sulpho acid of any radical," when treated according to the process described, would produce the dyestuff of the patent. The testimony showed that there were over 100 different substances in the group of "sulpho acids of any radical," and that only some of them—di-sulpho acids, with which alone the patentee had experimented—would, when treated according to the process, produce the dyestuff. The complainant contended that whenever a particular sulpho acid, not tried before, produced the dye-

stuff, his patent would cover it, although it did not cover sulpho acids which would not produce the result. We held that he could not thus "speculate on the equivalents of his claimed invention, and thereby oblige the public to resort to experiment in order to determine the scope of the claim of his patent."

In the second case above cited the claim was for an improvement in the art of treating tobacco leaves, which consisted in "applying an alkali to the leaves of the growing plant." Patentee had produced his result of applying a specified alkali to the leaves; but the broad construction of the claim covering *all* alkalis was held void because it would be broader than the invention, as it would cover potash, an alkali which would not accomplish the result, and the patentee had not experimented to discover what alkalis would and what would not do so.

[8] The case at bar, however, does not come within the principle laid down in these decisions. Of the 40 or more nonrare earth metals, it is not shown that there is one of them which will not, when alloyed with cerium, produce a pyrophoric compound. Some of them will produce a less efficient one than iron does. As the patent indicates, proportions must be varied with different constituents to product better results; but we are satisfied from the record that (with the exception of metals found in such small quantities that they are known merely in the laboratory and so no one has experimented in combining them with cerium) each and every nonrare earth metal is a fair equivalent of iron in the compound of this patent.

The decree is affirmed, with costs.