OUTLOOK ENVELOPE CO. et al. v. GENERAL PAPER GOODS MFG.
CO. et al.

(Circuit Court of Appeals, Second Circuit.    January 12, 1917.)

No. 42.

1. PATENTS ⬅167(1)—CONSTRUCTION—SPECIFICATION AND CLAIMS CONSTRU-
ED TOGETHER.

It is a general rule of construction of patents that no patent covers all
the inventive conceptions of the patentee existing at the time when he
procured it, but only such device, with reasonable equivalents of ele-
ments, as he described and claimed, and what the claimed invention is
must be found in the specification, with such light as the drawings may
throw upon it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243.]

2. PATENTS ⬅328—INFRINGEMENT—WINDOW ENVELOPE MACHINE.

The Slater patent, No. 893,105, for an envelope machine, which is es-
sentially a patch-applying mechanism for making window envelopes, and
which can be used in connection with well-known machines of the prior
art, held not infringed.

Appeal from the District Court of the United States for the East-
ern District of New York.

Suit in equity by the Outlook Envelope Company and the United
States Envelope Company against the General Paper Goods Manufac-
turing Company and others.   Decree for complainants, and defendants
appeal.   Reversed.

Appeal from decree in equity in favor of plaintiffs, entered in the District
Court, the suit being on claims 5, 14, and 15 of patent No. 893,105 (to Slater),
for an "envelope machine."   Claims 5 and 15 of this patent were before this
court in Outlook Envelope Co. v. Samuel Cupples Envelope Co., 223 Fed. 327,
138 C. C. A. 589 (which will be hereinafter called the Cupples Case).   Claims
5 and 15 are there set forth (223 Fed. 332, 138 C. C. A. 589), Claim 14 is as
follows: "In an envelope machine, the combination of the following instru-
mentalities, means for applying gum around an opening in an envelope blank,
means for feeding the gummed blank to a pressing mechanism, means for ap-
plying a patch to the envelope blank to cover the opening, a pressing mechan-
ism for securely affixing said patch to said blank, and means for folding the
flap of the envelope."

Benjamin M. Kaye, of New York City (Livingston Gifford and
Joseph L. Levy, both of New York City, of counsel), for appellants.

Frederick P. Fish, Louis W. Southgate, and O. Ellery Edwards, Jr.,
all of New York City, for appellees.

Before COXE, WARD, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge.   The nature of Slater's invention was
sufficiently stated in the Cupples Case.   We now assume that the pat-
ent is of a primary nature, and that the machine embodying it has
proved useful and profitable in the art of manufacturing with cheap-
ness, rapidity, and in great numbers what are called "window enve-
lopes."   The single question in this litigation is whether this defend-
ant's device is an infringement.

It is worthy of note that, while the patent is called one for an "envelope machine," the valuable invention revealed does not purport to cover a complete apparatus for manufacturing those articles, but a contrivance for rapidly and mechanically providing the "window" of an envelope blank with the transparent patch through which the address is to be read. Before Slater, envelope machines of differing types existed in great perfection; and the patentee recognized this by stating that his "patch-applying mechanism" was shown and described in connection with a pre-existing and well-known style of machine. But he further said:

"I do not confine myself to this particular type of machine; any type of [machine], preferably one in which a *dwell* can be given to the envelope blank between the gumming and folding mechanism, is adapted to the application of my patch-applying mechanism."

Thus, however meritorious the patent, Slater himself defined his inventive thought, as limited to a "patch-applying mechanism," whereof he showed and described one specimen, while asserting that it could be used and was useful (a) "in any type of envelope machine," though (b) "preferably one in which a *dwell* can be given to the envelope blank between gumming and folding mechanisms."

In view of our opinion in the Cupples Case, it is enough now to say that the crucial characteristic of the thing described and illustrated by Slater is that it presents to the creasing and folding mechanism of an old envelope machine a blank with the patch already gummed to and across the "window" opening; that this is done by interposing between slightly modified gumming mechanism and an old folding mechanism a new patch-applying mechanism, and that such interposition is accomplished by utilizing for the purpose of patch application a "dwell" or momentary stoppage of the blank on its way from gumming to folding mechanism; which *"dwell,"* or pause, or stoppage, is a calculated hesitation in the necessary travel of the blank, if not an existing characteristic of the machine to which Slater added his ingenious device.

Before considering infringement, claim 14 may be studied; since that form of words is in suit for the first time. The gentleman who drafted Slater's patent acted as his expert witness herein, and admitted that every combination element in claim 14 would be found in any envelope machine capable of making an envelope and applying a patch in the course of the making, unless (possibly) a machine were made applying the gum to the patch instead of to the blank—a difference assuredly immaterial if the claim is to be taken literally. This statement we regard as an admission of what is obvious from the face of the claim, viz.: It is so drawn that, unless read in the light of the disclosures of the specification, it will cover every means now conceivable of producing the result achieved by Slater. Rarely does any claim more plainly require application of the thought stated in Mitchell v. Tilghman, 19 Wall. 391, 22 L. Ed. 125, and Hobbs v. Beach, 180 U. S. at page 400, 21 Sup. Ct. 409, 45 L. Ed. 586, that the words "as described," or "substantially as described," or words of like import which refer back to the descriptive parts of the specification must be

implied, if not expressed, in any claim; for otherwise "the patent in many cases would be invalid as covering a mere function, principle or result, which is obviously forbidden by the patent law, as it would close the door to all subsequent improvements." It follows from this that claim 14 adds nothing to the strength of the plaintiff's case, which substantially rests upon the claims before us in the Cupples Case. Whether defendant infringes claims 5 and 15, depends upon the discovery of equivalence. Plaintiff urges that under Morley v. Lancaster, 129 U. S. 286, 9 Sup. Ct. 299, 32 L. Ed. 715, it must prevail; while defendant holds Westinghouse v. Boyden, 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136, to be decisive in its favor. We find no such contradiction in legal statement as this contention implies.

Infringement is always a question of fact, the inquiry is whether certain things which can be usually seen and handled are to be held within or without the protected inventive idea of a patentee. Courts and juries, like other men, do not always think along identical lines; the opinions of different men differ widely as to the meaning and content of things that all men can see and handle. But the rule of law remains the same; the results deduced from the facts differ not with the law, but with the opinions entertained as to the probative value of visible and tangible phenomena, which are never alike in two litigations. This is inherent in the nature of things.

In the Westinghouse Case the rule was stated that where the invention is functional, and the defendant's device differs from that of the patentee only in form or in a rearrangement of the same elements of a combination, the defendant is an infringer. But, even if the patent be a pioneer, the "alleged infringer must have done something more than have reached the same result. He must have reached it by substantially the same or similar means, or the rule that a function of a machine cannot be patented is of no practical value." In the Morley Case it was said that "it is open to a subsequent inventor to accomplish the same result if he can by substantially different means; though where the invention is of a primary character subsequent machines which employ substantially the same means to accomplish the same results are infringements." It is not true that these two oft-cited decisions differ as to the law. Both declare a rule for orderly thought, viz. that to justify a decree for infringement of any patent, a *substantial* similarity must be found—not in function or result, but in the means by which the function is accomplished or the result reached What can never be regulated by law, prescribed by statute, or established by judicial decision, is to compel all men to ascribe the same importance to the same piece of evidence.

[1] The general rule of construction, applicable to patents small and great, has often been declared by this court. "No patent covers all the inventive conceptions of the patentee existing at the time when he procured it, but only such device (with reasonable equivalents of elements) as he described *and* claimed." Loraine, etc., Co. v. General Electric Co., 202 Fed. 215, 120 C. C. A. 615. And a patentee "obtains a monopoly only of what he discloses *and* claims. * * * It is in the specification (with such light as the drawings may throw upon it) that we are to find what the alleged invention is." Hall-Borchert,

etc., Co. v. Ellanam, etc., Co., 213 Fed. 341, 130 C. C. A. 193. The generous judgment, and liberality in equivalents which (in respect of pioneer patents) are incumbent on all triers of the facts, can never go beyond the limits imposed by this rule. A good illustration of the extent to which generosity may go, is found in Treibacher, etc., Co. v. Roessler, etc., Co., 219 Fed. 210, 135 C. C. A. 108, where it was pointed out that the "doctrine of equivalents does not confine the patentee to equivalents which he has expressly referred to," and under a claim which mentioned only an alloy of cerium and iron, the substitution of magnesium for iron was held not to avoid infringement. Consolidated, etc., Co. v. Metropolitan, etc., Co., 60 Fed. 93, 8 C. C. A. 485, exemplifies another canon of construction. There one element of a combination was a "mechanical-fit valve," but the drawings showed only such valve with a knife-edge bearing; yet no restriction upon the claim was inferred from this fact, because there was "no suggestion that anything depends upon a bearing of that shape." Conversely, a claim must be limited by the revelations of the specification and drawing, when something does "depend upon" them; i. e., when the form and mode described are as matter of fact, the limitations of inventive thought. In such case every claim must be confined by the specification statements, because no patent can go beyond the limits of the thought that vivifies it, and justifies the monopoly created thereby. This investigation is always one of fact.

[2] In the present case we find that defendant produces window envelopes exactly like the plaintiffs', and with even greater speed; but he does not interpose between the gumming and folding mechanisms of an envelope machine a patch-applying contrivance, but modifies the folding (and creasing) apparatus of a previously known machine, so that as a part of the act of folding and during its performance the patch is applied. Defendant, instead of presenting to the folding mechanism a patched blank, introduces into that mechanism one gummed, but unpatched, and applies the patch by means of an air blast operating through the folding plunger; and he does it without a "dwell." We are of opinion that the so-called "dwell" of defendant's machine is no more than the instant of time necessary to effect a change in the direction of the plunger movement. The essential difference between such a stoppage and starting in reverse, and the "dwell" of the patent in suit, is that it is not a part, nor possible part, of defendant's method or apparatus, to utilize a pause in the progress of the blank, for the purpose of fastening the patch.

If the device revealed by the patent for feeding and applying window patches to a gummed surface is compared with that used by defendant, there is no similarity. Indeed, the likeness asserted by plaintiff comes down to this—that defendant has a sufficient pause in his plunger descent, to enable the envelope blank or the patch, or both, to register, and that pressure is then applied to affix the patch to the gum. Pressure cannot be patented, nor can any claim cover all possible pressures as an element in a combination, unless pressure per se is functional in the invention, something obviously untrue in this instance.

Plaintiff's pressure is of a wad of patches actuated by a follower, causing the lowest patch to stick to the gum; defendant's is that of an air blast operating upon a single patch inserted in the recessed face of the plunger, before the presentation of the blank, and held there by suction until the reversal of the air blows it against the gum. It is urged that this insertion of the single patch at the time indicated is the utilization of a "dwell." The argument fails, because whatever stoppage or hesitation there is in the operation of defendant's plunger, probably would, and certainly could exist whether the machine was making window envelopes or the ordinary kind. Because an ingenious device is suggested for creating or utilizing a delay in one species of machinery furnishes no *reason* for finding equivalence in the hesitations of other machines; and we have already stated our finding of fact as to defendant's "dwell," if he has one. The truth is that defendant has developed a method of making window envelopes with machines quite different from those improved by plaintiff; and both machines were known before either improvement was conceived.

When the patentee's other assertion is tested, viz. that his mechanism can be used "in any type of envelope machinery," it is plain that in defendant's machine nothing that Slater has disclosed could be used. We express no opinion as to whether such *possible* utilization would advance plaintiff's cause. We conclude that claim 5 is not infringed, because the defendant has used no means "for feeding the blank from the gumming to the folding mechanism with an intervening dwell of the blank"; and claim 15 is not infringed, because defendant has no "mechanism interposed between the gumming mechanism and flap-folding mechanism for applying a patch to the blank."

We may add our agreement with the statement of one expert, who declared that a mechanism by which the patch is applied to the blank while it is in motion and during the folding operation was entirely novel. That describes defendant's device, which is quite as deserving of praise and profit as is Slater's meritorious invention.

Let decree appealed from be reversed, and the bill dismissed, with costs in both courts.