BIRD v. ELABORATED ROOFING CO. OF BUFFALO, Inc., et al.

(Circuit Court of Appeals, Second Circuit. January 15, 1919.)

No. 151.

1. PATENTS ⬡112(3)—VALIDITY—EFFECT OF INTERFERENCE PROCEEDINGS.

The effect of Patent Office proceedings in interference is to settle on the record there made the question of priority between the parties, assuming that the claimed inventions are identical; but they do not finally establish that either party has made a patentable invention.

2. PATENTS ⬡328—IDENTITY OF CLAIMED INVENTIONS—PREPARED ROOFING.

The Bird patent, No. 1,181,827, and the Becker patent, No. 1,024,550, for prepared roofing held identical as to the invention claimed.

3. PATENTS ⬡106(1)—SECOND PATENT FOR SAME INVENTION—INTERFERENCE PROCEEDINGS.

Under Rev. St. § 4904 (Comp. St. § 9449) which expressly provides for declaring interference with an existing patent, priority of invention may be adjudged in the adverse party, and a patent issued to him.

4. PATENTS ⬡328—VALIDITY AND INFRINGEMENT—PREPARED ROOFING.

The Bird patent, No. 1,181,827, for a prepared roofing, held valid and infringed.

5. PATENTS ⬡328—VALIDITY AND INFRINGEMENT—PREPARED ROOFING.

The Bird patent, No. 1,036,427, for prepared roofing, held valid, but not infringed.

6. PATENTS ⬡165—CONSTRUCTION—BROAD CLAIMS.

A broad claim does not extend invention, and if a patentee discloses one means, a statement that he does not confine himself thereto will not justify a claim covering all means.

Appeal from the District Court of the United States for the Western District of New York.

Suit in equity by Charles S. Bird against the Elaborated Roofing Company of Buffalo, Incorporated, the Elaborated Ready Roofing Company, and Mathias B. Becker. Decree for complainant, and defendants appeal. Modified and affirmed.

The following is the opinion of Hazel, District Judge, in the court below:

"This is a suit in equity for infringement of two letters patent, No. 1,036,427, issued August 20, 1912, on application filed August 9, 1911, and No. 1,181,827, issued May 2, 1916, on application filed August 21, 1911. The two applications which were awaiting action by the Patent Office at the same time, relate generally to roofing paper—a chemically saturated waterproof paper designed to look like tiles, or slate or wood shingles, when laid on the roof of a building. Plaintiff's second patent was not issued earlier, owing to an interference with the Mathias B. Becker patent, No. 1,024,550, previously allowed, under which the defendants herein are manufacturing and selling their roofing material (Complainant's Exhibits 6 and 7 in evidence), and which is alleged to infringe both patents in suit.

"Building paper, having applied thereto an asphaltic material for making it waterproof and treated with fine mineral substances for protecting the surface, was not a new idea at the date of the invention, but was fairly well known and frequently used in the building of dwelling houses. Plaintiff's second patent deals generally with prepared roofing, known to the art, con-

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sisting of a paper or felt base, with a layer of viscus material applied thereto, usually of an asphaltic nature, which the base usually absorbs, while the remainder, to which fine particles are applied, is given a waterproof coating for forming a protective covering from the weather. The patentee regarded the sameness of appearance of roofing with straight edges a detriment to its sale for use on the nicer class of dwelling houses, and therefore prepared his roofing sheets somewhat differently, securing a new product. The novelty of his improvement consisted in applying a varicolored matter to the paper base, which gave it the appearance of slate shingling, making it attractive, and relieving the monotony of appearance.

"The application for patent was at first rejected on the ground that no invention was involved in adding a layer of coloring matter to the roofing in any desired design, and the examiner called attention to the Becker patent, No. 1,024,550, which had been granted a few months previously on a later application, and suggested an interference therewith. Claim 6, which was descriptive of Becker's invention, was then inserted. It reads:

" '6. Prepared roofing, comprising a sheet of fibrous material impregnated and coated with a waterproof material, said coating being varied in thickness in various fields, a coating of granular grit partially embedded in said coating in the fields of least thickness, and a similar coating completely embedded in the fields of greater thickness.'

"Six claims are involved herein, but, as the one set forth is typical, the others need not be reproduced.

"Becker's application was filed six months after Bird's, though a patent to him issued first, inadvertently, it is claimed, on April 30, 1912, and in the interference proceeding, involving this patent and Bird's application, much testimony was introduced relating to priority of invention. The evidence taken in the interference proceeding and the decision thereon have been stipulated into the record herein. Priority of invention was awarded to Bird. The board of examiners in chief, on appeal from the examiner, rendered a similar decision, which was later affirmed by the Commissioner of Patents. Then an appeal was taken to the Court of Appeals for the District of Columbia, where such decisions were affirmed. Becker v. Bird, 44 App. D. C. 432. Later this action for infringement was brought against the same parties and their privies.

"The answer of the defendants alleges that the plaintiff was not the inventor of the product described in claim 6 in issue, that his application for patent discloses no invention, that he appropriated the invention of the defendant Becker, and, further, that his patent was anticipated and had been in prior public use. Defendants also seek to have the Bird patent in question canceled under section 4918 of the Revised Statutes.

"The patentability of plaintiff's roofing material was decided on practically the same evidence in favor of the patentee herein by the Circuit Court of Appeals for the 7th Circuit (West Coast Roofing & Mfg. Co. et al. v. Elaborated Ready Roofing Co. and Mathias B. Becker [recently decided] 249 Fed. 221, 161 C. C. A. 257), wherein Judge Evans, writing for the court, held that the subject-matter was patentable, and that Bird, the plaintiff herein, anticipated Becker, under whose patent the defendants market their product. It was asserted by defendants in that case, however, that since the decisions on the question of priority of invention new evidence had been discovered, showing that Bird was not the first inventor of the product. The court held, however, that since no such evidence was submitted in the West Coast Case, the contention that it would be submitted in this action, then pending in this district, was insufficient reason for not deciding the priority of invention on the record before the court. It was ruled that, as Bird's application antedated Becker's, the decisions of the Patent Office tribunals and of the Court of Appeals of the District of Columbia would be followed; that, notwithstanding the fact that Becker first received his patent on an application filed later than Bird's, the latter's patent was anticipatory. The record in the Patent Office certainly shows that the subject-matter on both sides was treated as patentable, and Becker's attitude throughout, and the tenacity with which his claim to priority of invention was insisted upon, must certainly be considered as bearing on the good faith of an assertion of invalidity of plaintiff's patent.

"The prepared roofing field was still open for improvement at the date of the invention in controversy. The adaptation of a layer of asphaltic material provided with a coating of fine mineral particles, for varying its thickness and imparting to the roofing a varicolored appearance, was an innovation, resulting in a new and useful product; a preference for such roofing being immediately manifested by builders of dwelling houses. The design imbedded in the roofing is made lasting by using the materials in combination—by uniting the applied layer, the sand or grit, and the asphalt coating underneath, and by such adaptation a result is attained that the prior structures failed to attain. There are prior patents (Lee, No. 490,668) which speak of embossing or finishing the surface of the fabric by ordinary painting to produce the effect of shingles; but the specification does not enlighten the art as to how this was to be successfully done. It failed utterly to disclose a method of coating and utilization of granular grit embedded in the coating to produce the desired design, lines or ornamentation. Such method, in my opinion, amounted to more than mere substitution or selection of suitable material for accomplishing the object of the inventor.

"The Rugen & Abraham patent, No. 775,634, relates to waterproof roofing and accompanying ornamentation; but the substances used for accomplishing the result were a union of resins, fats, and pigment. The patent does not suggest using asphaltic coating varying in thickness and merging in it granular grit, and therefore was not anticipatory. The Goldberg patent, No. 1,113,116, was held not anticipatory in the West Coast suit, and, as there pointed out, the waterproof coloring matter did not mix with the asphalt base, as in Bird's patent, and is not anticipatory.

"As to the date of invention: The evidence in its entirety, supported by the findings of the Patent Office, proves that the patentee Bird conceived the idea in the year 1909, and substantially reduced the same to practice and filed his application for a patent ahead of Becker. It is not shown that Becker conceived the idea before August 21, 1911, which is the date of Bird's application for the patent under consideration. True enough, it is claimed by defendants that his application disclosed nothing patentable until he filed an amendment thereto, which included Becker's disclosure; but there is no satisfactory evidence to substantiate such claim. Complainant's preference in 1914 for paroid or proslate roofing, so-called, the first having the design painted on it marked off with asphalt lines, and the second being 'branded' as described in Bird's first patent, does not bear heavily upon the asserted appropriation of the Becker disclosure—a disclosure that eventuated afterwards, and which prematurely ripened into a patent. Priority of invention as an issue was thoroughly considered by the trained experts of the Patent Office, and nothing is found in the record before me to warrant overthrowing their decisions. Defendants claim generally that, while their invention was conceived as early as June, 1911, it was not finally reduced to practice until Becker filed an application for another patent (No. 1,157,665) involving the same subject-matter, in May, 1913, and that such later patent runs back to the original invention and antedates it. But this contention is without substantial merit.

"The law is that, to set aside a determination of the Commissioner of Patents as to priority of invention, the evidence before the court in an action for infringement must be of such clearness and probity as to satisfy the mind beyond a reasonable doubt that the determination was wrong. Standard Cartridge Co. v. Peters Cartridge Co. (C. C.) 69 Fed. 408; Gold v. Gold, 237 Fed. 84, 150 C. C. A. 286. Importance is attached to new evidence in this case relating mainly to diligence in reduction to practice, but such evidence does not persuade me of error in the final decision that Bird was first; nor has Becker proven his conception and reduction to practice until after Bird's application was filed, namely, on August 21, 1911. Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657.

"Reference is made in the briefs to samples of roofing manufactured by Becker and there is testimony by several witnesses not sworn in the interference proceeding; but it appears clearly enough that in 1911 there were painted roofing sheets made by Becker, which had become known to others—sheets without the grit—but the testimony as to such samples is not of a per-

suasive character, as the witnesses may have been mistaken as to the particular kind of roofing sheets they saw. The evidence does not substantiate defendant's claim that Bird's specific conception (claim 6) was induced by information obtained by the witness Bird from Becker, for at such time Bird's application had been filed, although claim 6 was included at the suggestion of the Patent Office. Nor in my opinion is the evidence sufficient to sustain estoppel or priority.

"As to infringement: The product, Plaintiff's Exhibit 6, is shown to be made of a wool felt base, saturated and coated with asphalt and then covered with a layer of colored mineral particles or crushed slate. The stripes overlaying the surface are produced by rolling onto the sheet heated asphalt, which is also used in saturating it. By such treatment the stripes or lines were united with the asphaltic base; the sand or mineral particles becoming firmly embedded, which imparted to the roofing varying thickness. Plaintiff's Exhibit 7 is made similarly, save that the asphaltic material, when heated, has a creosote solvent, which dissolves when applied to the base. Defendant's roofing is then rolled, and black sand is sprinkled thereon. As in Exhibit.6, the asphalt of the design united with the asphalt coating of the base, while the particles adhere to the thickest part, forming the stripes, but not so much at other portions of the roofing, where the coating is not so thick.

"Defendants further contend that Bird's invention is limited to a roofing with a smooth finish as distinguished from one covered with grit. But the specification of the second patent states explicitly that 'the particles 7, 7 (see Fig. 2), may be grains of sand, soapstone, or any other natural or artificial particles adapted for the purposes herein described,' and that 'the greater portions of such particles 7, 7, extend outward from said layer 6, and mechanically protect said surface from the weather,' implying no limitation as to shape or size. It makes no difference that no roofing has been produced by plaintiff with grit of the kind used in defendants' product, or that plaintiff preferred to make a smoother sheeting. There is no doubt in my mind but that grains of sand or soapstone—mineral particles—are a species of grit, as that term is ordinarily understood.

"My conclusion is that Bird's second patent fairly included a roofing material containing as essential elements either a smooth or a rough grit for making the lines, and that by the inclusion of claim 6 in the specification the improvement was not appropriated from Becker.

"As to Bird's patent, No. 1,036,427, of earlier date: The single claim covers the product and reads as follows:

" 'Building and roofing material, comprising a sheet of paper furnished with an asphaltic coating having a continuous layer of soapstone particles, certain areas or lines of said particles being embedded in said asphaltic material thereby exposing the asphaltic material and producing areas or lines of contrasting color.'

"The patentee acknowledges in the specification that paper roofing having the base impregnated with an asphaltic material and its surface sprinkled with mineral particles was an old expedient, but, desiring to relieve sameness of appearance in the product, he made the roofing with stripes or lines, and conceived the idea of forming them on the surface of the sheets of asphaltic material. To accomplish this, he used either sand, soapstone, or other mineral particles, and caused the same to adhere to the body of the sheet to form a protective covering 7. The color of the protective sheeting was in contrast with layer 6. By applying heat with pressure to the outer coating 7, he was able to form the design or stripes by embedding the sand or grit therein. This adaptation, as has been pointed out in considering the second patent, was first reduced to practice in June, 1909. The prior art roofings were without lines or stripes. Indeed, lines or stripes made from the protective material by branding it into the surface of the sheet formed a new and useful adaptation.

"One Schmidt attempted to show prior use. He decorated his roofing by hand with a brush and coated the seams; but he was unable to specify the character of the coloring, and the testimony is wholly insufficient to establish prior use.

256 F.—24

"Defendants further contend that the process in question, by which plaintiff's roofing was produced, was an abandoned experiment. The design or lines, it is true, were formed in the roofing material of the earlier patent, without varying the thickness of the asphalt coating, and the particles were pressed into the line areas without change in the thickness of the sheeting; but plaintiff was not restricted to one adaptation, and sues, not only for infringement of the specific adaptation embodied in claim 6 of the patent already considered, but also of the broad idea of making lines in the ready roofing by embedding the particles in the material for producing areas of contrasting color, irrespective of the manner in which it is accomplished. There is no doubt but that the patentee could have embodied several inventions in one patent, but he was not required by law to do so. He had the right to protect his inventions by different patents, notwithstanding that they originated at the same time. Thomson-Houston Electric Co. v. Elmira & H. Ry. Co., 71 Fed. 396, 18 C. C. A. 145. One patent may protect the generic invention and the other the specific. Cleveland Foundry Co. et al. v. Detroit Vapor Stove Co., 131 Fed. 853, 68 C. C. A. 233.

"In my opinion the claim in question was infringed by defendants' product, unless the patent is limited to soapstone or fine sand; but such a limitation is not contained therein. Defendants' paper base roofing is concededly coated with asphalt upon which there is sprinkled a continuous layer of mineral particles for forming the design, and the lines of the design have an asphaltic coating, which is thicker than the other portions of the roofing or sheet, owing to an additional quantity of asphalt, and there are areas of contrasting color—substantially the same product as plaintiff's.

"Decree for plaintiff, as prayed, with costs."

## The facts were stated in this court as follows:

The action is upon all the claims of two patents, both issued to the plaintiff. The general subject-matter of both patents is commercially known as prepared roofing, consisting of a "felt" made of paper stock impregnated and coated with a waterproofing material, usually asphaltum, and covered on the side intended to be exposed to the weather with mineral particles of many kinds, sand being in commonest use. Such roofing is a well-known substitute for shingles and the like.

The plaintiff-patentee has long been a manufacturer of such roofing, which was well known in and long before 1911. In August of that year plaintiff filed applications for the two patents in suit. His earlier patent, No. 1,036,427, issued August 20, 1912, is for an improvement in the above-described roofing material and contains one claim, as follows:

"Building and roofing material comprising a sheet of paper furnished with an asphaltic coating having a continuous layer of soapstone particles, certain areas or lines of said particles being embedded in said asphaltic material thereby exposing the asphaltic material and producing areas or lines of contrasting color."

The object of the invention thus defined was to produce a design upon the roofing material simulating slate, and thus relieve the dull uniformity of color and surface which (it was thought) impaired the marketability of the plain product. The only means of producing "areas or lines of contrasting color" contained in the disclosure is to apply heat or pressure or both to (apparently) either said "areas" or said "lines," and thus embed the mineral covering of the asphaltum coating more deeply in said coating within the lines or areas subjected to heat and pressure. This patent will hereafter be called the "branding" patent.

The other patent in suit did not issue until May 2, 1916, by reason of a long-continued interference with the defendant Becker.

On February 1, 1912, Becker himself filed an application which, like both of the patents in suit, covers an improvement in roofing materials. Thus the applications of Becker and of Bird for the second patent in suit were copending, but no interference was declared until Becker's patent issued (it was said by inadvertence in the Office) on April 30, 1912.

No. 1,024,550: This patent to Becker contained one claim, and after its issue an interference was declared between Bird and Becker; Bird then incorporating into his application Becker's' single claim, which is as follows:

"Prepared roofing comprising a sheet of fibrous material impregnated and coated with a waterproof material, said coating being varied in thickness in various fields, a coating of granular grit partially embedded in said coating in the fields of least thickness, and a similar coating completely embedded in the fields of greater thickness."

This followed the usual procedure of the Office and raised this issue, viz.: Both Bird and Becker asserted by their applications that patentable invention was disclosed. Bird at least asserted identity of invention and each of the interfering parties asserted his own priority.

This interference proceeded for some years, and Bird prevailed throughout the Patent Office and in the Court of Appeals for the District of Columbia; and thereupon, notwithstanding the existence of Becker's patent, issued as aforesaid, Bird obtained the second patent in suit (No. 1,181,827), containing six claims, including the one above quoted and appropriated from Becker. It is not though necessary to set forth any of the other claims.

The disclosure of this patent exhibits another and different method of producing a design prepared roofing, viz. by taking the old prepared roofing with asphaltic and mineralized surface and applying a pattern thereto, by laying thereon in lines the same viscous asphaltic material as had been used to surface the original "felt." and putting in this still plastic overlay mineral particles, preferably of a different color. Thus this style of roofing, as produced by both Bird and Becker, is of one thickness in one area and of greater thickness in the other and contrasting area. Bird's second patent will hereafter be called the "overlay" patent.

It thus appears that since the issue of the overlay patent both Bird and Becker (or their assignees) have owned separate grants of monopoly containing one claim in common, namely, the one last above quoted.

The relative merits of these patentees were exhaustively considered in the Seventh Circuit in West Coast, etc., Co. v. Elaborated, etc., Co., 249 Fed. 221, 161 C. C. A. 257, with the result that, not only Becker's patent in interference (1,024,550), but also another patent of his relating to the same subject-matter (1,024,549), were declared void as anticipated by the overlay patent to Bird.

When this decision was filed the present action was pending in the District Court; it was brought against the Elaborated Roofing Company of Buffalo only, whereupon the other present defendants-appellants petitioned to be admitted; it appearing that the original defendant was but a subsidiary of the intervenors. The prayer was granted, and an amended answer filed, setting up all the defenses usual in patent suits and especially that Becker, and not Bird, was the first inventor of whatever the invention is disclosed in the overlay patent.

The District Judge overruled all the defenses, declared defendants to infringe all the claims in suit, and this appeal was taken; but in this court the defense of prior invention in Becker over Bird was not argued and will not be considered by us.

J. Edgar Bull, of New York City, and John M. Zane and R. W. Lotz, both of Chicago, Ill., for appellants.

W..K. Richardson and Harrison F. Lyman, both of Boston, Mass., for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The effect of the Patent Office proceedings in interference is not doubtful; they settled, on the record there made, that, assuming identity in the assumed inventions of Bird and Becker, the former was the prior in time. National, etc., Co. v. Wheeler, etc., Co., 79 Fed. 432, 24 C. C.

A. 663. They did not finally establish that either party had, in common speech, invented anything, although of course an interference would have been impossible, had not each party declared on oath his claim to a patentable invention. This rule rests fundamentally on the interest of the public in every grant of monopoly, even the most beneficial.

Whether, under the circumstances shown, defendants (who are the Becker of the interference and his creatures) are not estopped or in some way prevented from presently urging that Bird, if he first invented anything, invented something different from the result of Becker's ingenuity, is a question we shall not consider, preferring to examine the merits of this record.

Since the new evidence as to priority introduced at the trial of this case has not warranted argument to us on that question, we assume priority in Bird.

[2] As to identity, it is enough to refer to the opinion in the West Coast Roofing Co. Case, supra. We do not assert that the judgment therein binds us in respect of this litigation, nor overlook arguments based on the peculiar way in which the relative merits of Bird and Becker were there made an issue; but we do concur in the result there reached after very prolonged discussion of a record identical on this subject with that before us, viz. that Becker, and Bird in his "overlay" patent, made exactly the same contribution to the sum of human knowledge.

As to the patentability of both the grants before us, there is nothing to add to Judge Hazel's discussion of the prior art as revealed by older patented inventions. We note, however, that in this court new or greater stress is laid on Hebblewhite, No. 322,601, as anticipating the "branding" patent. The argument is an endeavor to import into the art of roofing an anticipation from that of floor covering. Such contentions are legitimate and oftentimes succeed. The question is of fact, and it is impossible to appraise items of evidence so that they always pass current at some standard value, as do sterling coins. In this instance, we regard the similarity as very forced, and the remoteness of the arts so obvious as to negative the thought that any one, desiring to produce a design roofing, would gather even inspiration or suggestion from a patterned floor cloth.

The real and substantial question as to patentability does not rest on a meticulous comparison of this or that old patent, but on consideration of the query whether, assuming in, especially, Mr. Bird a long and intimate knowledge of the kind of roofing first above described, there was room for a mechanical product patent covering an ornamental variant of an old article of manufacture, when no change in roofing efficiency was sought or reached, and the means of ornamentation were so simple as are disclosed in both the patents in suit.

Solution of this question (always remembering the presumption in favor of invention, slight though it be) must be reached by consideration of the ample evidence before us, showing the existence of a real demand for a design roofing, and the failure of ornamental ad-

ditions produced by any material less durable or unchanging than the waterproofing surface itself.

By means very simple, but truly mechanical, and novel in their application, Bird solved the problem in two ways, and received two patents for so doing. He did more than put a design on roofing; he showed how to do it. Therefore he was and is entitled, not only to patent protection for his method, but for the result of his method, if both result and method were new. We reach this conclusion without any reliance on the doctrine of commercial success (which might well be invoked), and without being consciously affected by the obvious, and indeed admitted, fact that Becker, after fighting for six years to get something from Bird which they both called "invention," now discovers the acidity of the grapes, and says there was no invention after all.

[3] It is also urged that under section 4904, R. S. (Comp. St. § 9449), the Patent Office had no jurisdiction to "grant a second patent for the identical invention, * * * and such second grant is void." This means that, Becker having once gotten a patent, it was beyond the Commissioner's power, by or after interference or otherwise, to grant Bird's patent containing Becker's single claim. For this contention we are referred to decisions holding "that no patent can issue for an invention actually covered by a former patent" (e. g., Miller v. Eagle, etc., Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121), and it seems to be thought that some constitutional rights are involved or infringed.

All patent rights are statutory; the constitutional grant is merely a power to secure for limited times to inventors the exclusive right to their discoveries; Congress may exercise the power or refrain from so doing, and, if it does exercise the same, all grants of privilege are at the peril of the law creating them. Section 4904 expressly provides for interference with an existing patent; it was law when Becker applied for his patent; therefore he took subject to the possibility of just what happened, and has no right to complain. Whether such a statute as section 4904 could affect patents issued before its passage is a question not before us.

[4, 5] We thus agree with the court below that both patents in suit are valid, and that the overlay patent has been infringed; but there is only one infringing article proved, viz. an overlay design roofing which exactly responds (as would be expected) to the claim devised by Becker's solicitor and awarded to Bird after interference. We are of opinion that infringement by that article of the "branding" patent was declared by inadvertence.

[6] It is true that the single claim of that patent is so broadly drawn as to read on any roofing showing contrasting "lines and areas"; such contrast being produced by the "embedding" of some mineral particles in the asphaltic covering more deeply than other particles. But a broad claim does not extend invention; and if an inventor discloses one means, a statement that he does not confine himself thereto will per se certainly not justify a claim covering all means. Outlook, etc., Co. v. General, etc., Co., 239 Fed. at 879, 153 C. C. A. 5.

In this, as in many other instances, the proper inquiry is, what does the disclosure of the "branding" patent teach? It tells how to make "branded roofing," and gives no other information to the man skilled in the art. It states that the branding may result from heat, pressure, or the application of a solvent; beyond that there is not even the ft-referred to "pious aspiration." Therefore we do not think that Mr. Bird himself ever dreamed that his "overlay" roofing would (if made by a stranger) infringe his "branding" patent, and, if such is the case, Becker's product in evidence does not infringe.

The decree appealed from is modified, by denying infringement of valid patent No. 1,036,427, and, as modified, affirmed, without costs.