## ROYAL CO. v. TWEEDIE.

(Circuit Court of Appeals, Eighth Circuit. October 17, 1921.)

### No. 5782.

1. Patents ⬦165—Claims are measure of right to relief.

The claim of a patent is the measure of the patentee's right to relief.

2. Patents ⬦167(2)—Claims to be construed in light of specification.

The claims of a patent are to be construed in the light of the specification, and general language in a claim which points to an element or device more fully described in the specification is limited to such an element or device as is there described.

3. Patents ⬦165—Patent is disclaimer as to anything shown and not claimed.

A patent is a complete and legal notice to every one that he may freely use any combinations or improvements therein shown which are not clearly pointed out and distinctly claimed as the patentee's discovery or invention.

4. Patents ⬦168(2)—Claims narrowed in Patent Office cannot be expanded to cover what was rejected.

Where claims in an application have been narrowed by amendment to meet requirements of the patent office, the patentee cannot insist on a construction of the claims allowed which would cover what was rejected.

5. Patents ⬦328—1,153,977, for boot-top, held not infringed.

The Tweedie patent, No. 1,153,977, for a boot-top, as limited by the prior art and amendment of claims in the Patent Office, held not infringed.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by Charles Tweedie against the Royal Company. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 267 Fed. 224.

Amasa C. Paul, of Minneapolis, Minn. (Albert E. Hausman and Delos G. Haynes, both of St. Louis, Mo., and Fritz v. Briesen, of New York City, on the brief), for appellant.

James A. Carr, of St. Louis, Mo., for appellee.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. This is an appeal from a decree holding valid and infringed United States letters patent No. 1,153,977, issued to the plaintiff on September 21, 1915, for a boot-top. 267 Fed. 224. The bill of complaint also charged infringement of patent No. 1,-265,280, but this was abandoned at the hearing, so that we are only concerned with the validity of patent No. 1,153,977. The complaint contains the usual allegations and prayers for relief.

The answer denies all the material allegations of invention, and pleads failure of the plaintiff to comply with the provisions of sections 4900 and 4901, Rev. St. (Comp. St. §§ 9446, 9447), in failing to give sufficient notice to the public, by not having placed thereon or upon a large number thereof the legend "Patented," together with the date of the letters patent. It also pleads want of invention in view of the state of the art of manufacturing the article, and that it does not disclose any new or patentable invention, but merely involves ordinary skill and judgment.

The validity of the patent is also attacked for the reason that the thing patented by the letters patent had been described prior to plaintiff's alleged invention for more than two years prior to the filing of the application for said letters patent in a large number of patents set out in the answer; but in view of the conclusions reached it is only necessary to refer to Ludlow patent, No. 38,235, dated April 21, 1863; Ludlow reissue, No. 1567, November 10, 1863; McQuiston patent, No. 801,899, October 17, 1905; and Whitcomb & Dagget patent, No. 197,002, dated November 13, 1877.

The file wrapper shows that there were seven claims in the original application of the plaintiff. In claims 1, 2, and 3, it was claimed, a boot-top having the general lines of a high boot, the front and back seams being sprung in, whereby said boot-top is attachable to low shoes to simulate a high boot. In claim 4 he described his invention as:

"A boot-top for low shoes, said boot-top having its lower edges even with the sole of the shoe on each side, a strap connecting the lower edge of each side of the boot-top, and means for detachably securing the top front edges together."

Claim 5 described the boot-top "having its lower edges even with the sole of the shoe on each side, a strap connecting the lower edge of each side of the boot-top, said strap being shaped to fit the shank of the shoe, and means for detachably securing the top front edges together." Claim 6 describes:

"A boot-top for low shoes, said boot-top comprising full length quarters of unequal length from top to bottom, whereby their lower edges are even with the sole of the shoe on each side, a strap connecting the front portions of the lower edges of said quarters, said strap being shaped to fit the shank of the shoe, and means for detachably securing the top front edges of said quarters together."

In claim 7 he added to what is set out in claims 5 and 6, "a foxing of distinctive material from said top surrounding the heel portion thereof." This application was rejected, the examiner suggesting as a form for claims 1, 2, and 3:

"A boot-top to be worn over low shoes having full length quarters following the general lines of the upper portion of a high boot, the lower edges of said boot-top being arranged to coincide with the edges of the sole of the shoe around the heel and along the sides of the shank, and the front and back lower portions of said boot-top being sprung in a sufficient amount to make the lower edges of the boot-top closely hug the shoe, and a strap connecting the lower side edges of the boot-top, said strap being arranged to lie beneath and fit the shank of the shoe from the breast of the heel to the points where the lower edges of the boot-top intersect the edges of the sole."

Claims 4 to 7 were rejected upon Blumenthal (German), No. 19,971, Johnson (British), No. 308, Ludlow, April 21, 1863, No. 38,235, and Ludlow, November 10, 1863, No. 1,567, as not involving invention in view of the Ludlow patents.

Thereupon the application was amended by canceling all the claims and inserting as claim 1 the form suggested by the examiner. He added three other claims, which are practically the same, except that instead of "a low shoe" he uses the word "shoe." The examiner, upon the amended application, suggested that the word "boot-top" in claim 1, line 9, be changed to "such portions," upon the ground that the "springing in of the front and back lower portions do not cause the lower edges along the sides of the shank to closely hug the shoe, but only the lower edges of the portions sprung in." He also suggested some slight changes in claims 2 and 3.

Thereupon the application was again amended to conform to the suggestions of the examiner and the patent granted.

Ludlow patent, No. 38,235, shows a top-boot or "gaiterette or anklet, fitting over the shoe and ankle, similar to the one shown in the drawing, and inserting in the back seam a steel strip or spring, for the purpose of bracing or supporting the ankle; and, furthermore, for the production of a symmetrically fitting gaiterette similar to those now worn." Ludlow patent, No. 1,567, shows a gaiterette, shank strap cut in form of a trapezoid, two flaps, one on each side of the boot-top to which the strap is attached, so that "the lower edge of the gaiterette is drawn up tight to the surface of the shoe and held in close contact throughout * * * and the strap itself as well as the lower edge of said gaiterette are drawn up tight to the surface with which they are in contact * * * and the direction of the strain exerted by the shank strap on the edge of the gaiter, being at an obtuse angle with said edge, is capable of keeping the same close to the surface of the shoe, thus preserving the elegant appearance of the foot."

In these two patents may be found all that Tweedie has, except the extension of the boot-tops to a level with the sole of the shoe and the "spring" or scantiness of material at the lower part of the front and back seams.

Whitcomb & Daggett patent, No. 197,002, shows that the scantiness of material at the lower edges of boot-tops to make them fit closely was not new. There the patentees first placed their boot-top wet on a last or former. The last or former is described:

"This last or former is also so shaped, by curving inward at the bottom, as to give the gaiter, when fitted and dried to it, a similar inward curve or spring, which causes it to hug snugly to the foot of the wearer, especially over and around the instep and the heel. * * * The edges are then trimmed and stitched ·or bound, buttons attached to one end of the lap or fold, and button holes made in the other end of the lap, a strap affixed to go under the bottom of the wearer's boot or shoe, and it is ready for use. * * * Overgaiters made as described may reach above the ankle to the knee, or above, forming what is termed a 'legging.'"

Here is where Mr. Tweedie found his "spring" idea and its illustration.

McQuiston patent, No. 801,899, shows, what she calls, "a shoe-dress," which consists of cloth to fit over the shoe. In the application she says:

"The heel portion of the shoe-dress being left open to permit the heel of the shoe to protrude and the edge portion bordering upon said heel-opening being drawn in to insure a close fit of the dress about the heel of the shoe and prevent its creeping."

Here we find a covering which extends down to the level of the sole at the heel and has the scantiness about it, and has the shank-strap in the shoe-dress, which Mr. Tweedie claims. This shoe-dress has a sole under and covers the front part of the shoe.

The examiner upon the first application said of claims 1, 2, and 3, "The only feature of novelty in these claims appears to reside in the 'sprung in' front and back portions of the boot-top," and that "these claims should include the strap passing under the shank, for without such strap the utility of springing in the front and rear portions of the boot-top would be lost." Therefore he held in effect that without the strap the invention would not be patentable.

An examination of Mr. Tweedie's patent discloses but one method of distinguishing his patented device from those described in the art before. The claims do not distinguish it, for they read "the front and back lower portions of said boot-top being sprung in a sufficient amount to make the lower edges of such portions closely hug the shoe," and this is no more than Whitcomb & Daggett did. Turning to the specifications to ascertain what the new principle was that Mr. Tweedie insisted distinguished his invention from other devices for the same purpose, we find therein that the "front and back seams are cut·scant at their lower ends to throw the top in toward the last, and thereby the top does not fit the last exactly and cannot be pulled on to the last quite to its proper position. It will pull onto a shoe made on the same last, and will grip it in such a snug fit as to appear to be sewed thereto,

because it squeezes in the fore part of the shoe slightly where it would bind the last, and as it has the same lines as those of the shoe it appears to be a continuation thereof."

[1] It is well settled that the specifications and claims must be read to mean what they say, and the device which they specify must be shown to be the one which produces the effect which they specify. The object of the patent law is to secure to the inventor all to which he is entitled, and it is also intended to apprise the public of what is still left open to them. The claim must be the measure of the patentee's right to relief. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 278, 24 L. Ed. 344; McClain v. Ortmayer, 141 U. S. 419, 424, 12 Sup. Ct. 76, 35 L. Ed. 800; United States L. & H. Corporation v. Safety Car H. & L. Co. (C. C. A.) 261 Fed. 915, 918.

[2] The claim in the patent is the measure of the invention. The specification, however, may be referred to in construing the patent, and it is well understood that the claims are to be construed in the light of the specifications; while the specification is never available for the purpose of expanding a claim, although it may be referred to for the purpose of limiting it. Fowler & Wolfe Mfg. Co. v. McCrum-Howell Co., 215 Fed. 905, 909, 132 C. C. A. 143; Miller Rubber Co. v. Behrend, 242 Fed. 515, 521, 155 C. C. A. 291. To the same effect are Seymour v. Osborne, 78 U. S. (11 Wall.) 516, 20 L. Ed. 33; Mitchell v. Tilghman, 86 U. S. (19 Wall.) 287, 391, 22 L. Ed. 125; Bickford Co. v. Merrill (C. C. A.) 268 Fed. 540.

"General language in a claim which points to an element or device more fully described in the specification is limited to such an element or device as is there described." Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 449, 23 C. C. A. 223; Outlook Envelope Co. v. General Paper Goods Mfg. Co., 239 Fed. 877, 153 C. C. A. 5; Bird v. Elaborating Roofing Co., 256 Fed. 366, 167 C. C. A. 536.

[3] Section 4888, Rev. St. (Comp. St. § 9432), requires the inventor to particularly point out and to claim distinctly the part, improvement or combination which is claimed as a discovery. When, under this statute, an inventor has made his claims, he has thereby disclaimed and dedicated to the public all other combinations and improvements apparent from his specification or improvement which he claims as his own. While the patent is notice of the claims which it contains and allows, it constitutes an estoppel of the patentee from claiming under that or any subsequent patent any combination or improvement there shown which he has not clearly pointed out and distinctly claimed as his discovery or invention when he received the patent. It is a complete and legal notice to every one, notice on which every one has a right to rely, that he may freely use such improvements and combinations without claim or molestation from the patentee. McBride v. Kingman, 97 Fed. 217, 223, 38 C. C. A. 123; Valvona-Marchiony Co. v. Perella, 212 Fed. 168, 129 C. C. A. 24.

"The specification of a patent, which forms a part of the same application as its claims, must be read and construed with them, not for the purpose of expanding nor for the purpose of limiting or contracting the latter, but for

the purpose of ascertaining their true meaning and the actual intention of the parties when they were made and allowed." O. H. Jewell Filter Co. v. Jackson, 140 Fed. 340, 344, 72 C. C. A. 304; Century Electric Co. v. Westinghouse Elec. & Mfg. Co., 191 Fed. 350, 354, 112 C. C. A. 8; O'Brien-Worthen Co. v. Stempel, 209 Fed. 847, 853, 128 C. C. A. 53; Diamond Patent Co. v. S. E. Carr Co., 217 Fed. 400, 406, 133 C. C. A. 310.

As the springing in by the scantiness of the material of the lower part of the seams at the front and back of the boot-top, to such an extent that the boot-top cannot be drawn on to the last on which the shoe is made, but can be drawn on and worn over the shoe made on the last, is the only characteristic of the defendant's patented device by which others can distinguish Mr. Tweedie's device from the springing in of such seams, and the lower edge of boot-tops not claimed in Tweedie's, it was indispensable to prove infringement that there should be proof that defendant's boot-tops had this characteristic.

The evidence fails to establish this characteristic in the boot-tops made or sold by the defendant. While the witnesses for plaintiff testify that his device is embodied in the defendant's boot-top, those for the defendant testify that it is not. No one testifies that defendant's boot-tops are so made that they cannot be drawn on over the last on which the shoes are made which they fit, and yet can be and are usable on the respective shoes made on such lasts. The evidence convinces that the boot-tops sold by the plaintiff and defendant alike are so large that they can be drawn on over such lasts. The testimony of Mr. Mahler, a witness for the plaintiff, on cross-examination, on that point, is that a "4C will fit a 3½D, a 4 and 4½C, a 4½ and a 5D and a 5A and a 5½A. The demonstration I gave just now is a 4C boot-top on a 5A shoe." He further testified that "under his instructions he advised his customers that such use could be made of the Tweedie boot-tops," and that "instructions to that effect were contained in a chart, furnished to all customers." This chart was also identified by the plaintiff as being furnished by his direction to customers buying his boot-tops.

If these boot-tops were made so small, scant, or light that they could be drawn on only over the lasts on which those shoes were made, how would it be possible that a 4C boot-top would fit a number of larger sizes of shoes?

[4, 5] In order to obtain the patent, plaintiff was required by the Patent Office to make it much narrower than in his first application he intended, which was done by filing an amended application narrowing it. He cannot, therefore, insist on a construction of the claims allowed, which would cover that which has been rejected. Hubbell v. United States, 179 U. S. 80, 21 Sup. Ct. 24, 45 L. Ed. 95; Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645; American Laundry Mach. Co. v. U. S. Hoffman Co. (C. C. A.) 271 Fed. 856. As narrowed defendant's device does not infringe it, as the evidence does not establish a scantiness or springing in the lower ends of the front or back parts of the defendant's boot-tops that would prevent their being drawn on to a last on which the respective shoes were made that they were designed to fit. As this

"springing in" described in the specification and claims, is a characteristic of each of the claims of Mr. Tweedie, none of them was infringed by the defendant.

The decree is reversed, with directions to dismiss the complaint.