## In re HAWKES et al.
### Patent Appeal No. 3305.

Court of Customs and Patent Appeals.
May 31, 1934.

Kenyon & Kenyon, of Washington, D. C., for applicants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellants have presented their application to the United States Patent Office for a patent on a certain alleged improvement in floor covering. This improvement is as follows: A linoleum of the conventional type, with a burlap backing, is coated on the back thereof with a layer of cementing material. A preferable mixture for said material comprises a mixture of raw rubber and rosin, thinned with naphtha, kerosene, or some similar substance. The inventor shows two methods of applying this cementitious material: In one form the material is permanently in a tacky condition, and, for this form, the inventor provides a protecting sheet of glazed cambric, oil paper, cellophane, or similar substance, which is placed over and upon said tacky substance and is removed when the linoleum is to be laid. In the other form, the adhesive character of the cementitious layer is stimulated by the application of water, or some other solvent, before the linoleum is laid.

Claims 7 to 11, inclusive, were rejected by the Examiner upon reference to the following: Eaton, 1,164,177, December 14, 1915; Craft, 1,277,871, September 3, 1918; Harral, 1,182,764, May 9, 1916; Tully, 1,-223,538, April 24, 1917; Player (Brit.), 339, August 29, 1912; Maynard, 1,474,423, November 20, 1923.

Claims 7 and 8 are illustrative and are as follows:

"7. As a new article of manufacture, a preformed floor surfacing structure ready-to-lay in bonded relation to a sub-surface, comprising a body portion characterized by a sheet-like strain-resisting foundation and a layer of wear-resisting drying-oil composition integral with one side of said foundation

and constituting the upper or wearing surface of the body portion, in combination with a layer of cementitious material applied to the back of said body portion and on the other side of said foundation and adapted to bond the said body portion permanently to a sub-surface to which it may be applied.

"8. As a new article of manufacture, a preformed floor surfacing structure ready-to-lay in bonded relation to a sub-surface, comprising a body portion characterized by a sheet-like strain-resisting foundation and a layer of wear-resisting drying-oil composition integral with one side of said foundation and constituting the upper or wearing surface of the body portion, in combination with a layer of permanently sticky cementitious material applied to the back of said body portion and on the other side of said foundation and adapted to bond the body portion permanently to a sub-surface to which it may be applied."

The Examiner stated, as to three of the references:

"The patents to Tully, Player and Harral, all of record, will not be discussed as they are not relevant to the present issue."

On appeal, the Board of Appeals affirmed the decision of the Examiner. In doing so the board directed attention to certain patents referred to in the decision of In re Fischer, 58 F.(2d) 1058, 19 C. C. P. A. 1231, particularly the patent to Cavey, No. 1,361,517, of December 7, 1920, as also anticipating the disclosure of applicants here.

The appellants insist that the use of the reference Cavey by the Board of Appeals, in rejecting their application, was improper, and, in support of their position, cite two cases: In re Coley, 40 F.(2d) 982, 17 C. C. P. A. 1174, and In re Woolson, 58 F.(2d) 434, 19 C. C. P. A. 1154. In the first of these cited cases, the holding was that this court would not consider for the first time on appeal a new reference. In the second cited case, this court merely called attention to the fact that the Examiner referred, in his decision, to a British patent which was not cited as a reference, and did not appear in the transcript, and refused to consider the same.

These cases can hardly be considered as supporting the appellants' position in this respect. As a matter of law, the point made by the appellants is not well taken. Rule 139 of the rules of practice in the United States Patent Office expressly gave to the appellants an opportunity for hearing as to said Cavey reference, if they cared to have any further hearing by the Examiner thereon. Not having exercised their right, under said rule, they waived any right of objection to the use of said reference. In re Greenfield, 40 F. (2d) 775, 17 C. C. P. A. 1217.

In the record there appears the affidavit of Gustave L. Kolenski, an expert in the installation of linoleum and floor coverings in general. This affidavit shows quite plainly that heretofore the prevalent art of laying linoleum has consisted in cutting the linoleum to fit the space where it is to be laid, and then covering the floor upon which the linoleum is to be laid with some sort of adhesive cement, then laying the linoleum thereon, and afterwards rolling the same with a heavy roller of approximately 150 pounds weight to cause the linoleum to lie flat and be free from wrinkles and folds. This is shown to be an art, the practice of which requires much experience and care. The laying of linoleum in the manner just described is also shown to be very expensive, and to so add to the expense of laying such material as to prevent a more general use of the same. Linoleum is usually made from a composition of ground cork and linseed oil, and is shown by the affidavit to be capable of absorbing moisture, and of swelling and shrinking with changes of atmospheric conditions. This causes wrinkles to form in the linoleum, if it is not properly laid and completely in contact with the base upon which it rests.

It is further shown that by use of the invention of appellants, linoleum may be cut to fit the space to be covered, then prepared for laying by pulling off the cellophane or protective coating, and then laid directly upon the floor, or other subsurface upon which it is laid, and that it will then adhere thereto, without rolling, and will be permanently adherent to its subsurface. This, it is said, obviates all the trouble and expense of applying cement separately, and furnishes a material which can be laid by one who is not an expert in the art.

These contentions are not controverted by the solicitor for the Patent Office. Utility and novelty of the product are frankly admitted. However, the position of the solicitor is, as was the position of the tribunals of the office, that there is nothing in this product which is inventive, and which would not be naturally suggested to the mind of one skilled in the art.

The references ignored by the Patent Office tribunals show only rubber mats attached to floor coverings to prevent the sliding of

such coverings, and are not relevant references here.

The references relied upon are four: First, the Maynard reference. In this, a strip of felt insulation is laid between the linoleum and the floor base. On each side of this felt layer is placed, at the time it is made, an adhesive cement of some kind. At the time of use these cementitious layers are made tacky by the use of a solvent of some kind. When the strip is laid upon the subsurface, it will stick to the same, and when the linoleum is placed on top of the felt, the base of the linoleum will likewise adhere to the top surface of the felt.

The reference Eaton shows a heel pad for a shoe, with a nonviscous waterproof adhesive coating on one side, which will be caused to adhere to the shoe by the application of heat and pressure. A further feature of the invention contemplates providing this adhesive with a sheeting to protect it while being handled, which may be removed before using.

The patent to Craft shows a repair patch with an adhesive rubber coating on one side, which adhesive layer is protected by a thin fabric which may be removed when the patching material is used.

The patent to Cavey shows a bituminous roofing strip, upon one side of which is placed a cement coating in the form of a comparatively soft nondrying waterproof cement. The roofing consists of rolls of saturated felt. In preparing for shipping, two strips of the roofing are placed in contact, their sticky sides being the contacting surfaces. This permits the shipment of the rolls, and when the material is to be used and put in place, this may be done by pulling the contacting strips apart. The material may be cut into suitable shapes, such as shingles, etc., and, when laid with overlapping surfaces on a roof, the overlapping surfaces will adhere, thus, it is said, preventing injuries from warping, twisting, or wind pressure.

The only question involved is whether the disclosure of the appellants presents a patentable device in view of such prior art.

In our opinion, the reference Maynard shows a product which is not an anticipation of that here presented. The purpose of the inventors here was to lay linoleum directly upon the floor, or base, without intervening fabrics or materials. Maynard had no such purpose, and what he did do, so far as the application of the linoleum was concerned, was little more than was known to the prior art when cement was applied to the floor, and the linoleum then placed upon the cement. The principle was the same. The inventors here propose not to put the cement upon the subsurface, but to put it upon the linoleum.

The reference Eaton to heel pads, and Craft to repair patches, are, in our opinion, not references to devices in an analogous art, and not such as would be naturally within the knowledge and purview of workers in the floor covering art. Hence, the references are not thought to be anticipatory.

The Cavey reference presents more difficulty. It might be thought that a patent involving roofing material, and an application involving flooring material were of the same art. Our attention is called to Bird v. Elaborated Roofing Co., 256 F. 366, 372, where the Circuit Court of Appeals of the United States, Second Circuit, was considering an appeal from the District Court of the United States for the Western District of New York. The case, which was in equity for infringement, involved patents upon a chemically saturated waterproof paper, designed to look like tiles, or similar roofing materials, when laid on a roof. Hough, Judge, stated, in the course of his opinion:

"As to the patentability of both the grants before us, there is nothing to add to Judge Hazel's discussion of the prior art as revealed by older patented inventions. We note, however, that in this court new or greater stress is laid on Hebblewhite, No. 322,601, as anticipating the 'branding' patent. The argument is an endeavor to import into the art of roofing an anticipation from that of floor covering. Such contentions are legitimate and oftentimes succeed. The question is of fact, and it is impossible to appraise items of evidence so that they always pass current at some standard value, as do sterling coins. In this instance, we regard the similarity as very forced, and the remoteness of the arts so obvious as to negative the thought that any one, desiring to produce a design roofing, would gather even inspiration or suggestion from a patterned floor cloth."

This suggestion has considerable force here. It is quite doubtful whether the inventors here, working in the floor covering art, would, under any circumstances, have their attention called or directed to products used in the art of the maker of roofs. The fact that one product is exposed to the weather and the other is used inside, and where it will be exposed to other conditions, is of importance in this consideration.

In the recent case of In re Luks, 69 F.(2d) 552, 21 C. C. P. A. ——, we reviewed the cas-

es on the applicability of references taken from nonanalogous arts at length, and it is not thought necessary here to travel over the same ground.

██ We are of the opinion that the question of the patentability of the product disclosed in this application is so doubtful that the appellants should, under the ordinary rule, have the benefit of such doubt.

The decision of the Board of Appeals is, therefore, reversed.

Reversed.

HATFIELD, Associate Judge, did not participate.